A. J. BUMB, Trustee in Bankruptcy of Dinsmore Equipment Company, a California corporation, Bankrupt, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16421.

United States Court of Appeals Ninth Circuit.

March 16, 1960.

Craig, Weller & Laugharn, Joseph S. Potts, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., George C. Doub, Asst. Atty. Gen., William A. Montgomery, Morton Hollander, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and BOLDT, District Judge.

JERTBERG, Circuit Judge.

Before us is an appeal from a judgment of the United States District Court affirming an order and decree of the referee in bankruptcy denying appellant's petition for an order decreeing that certain chattel mortgages held by respondent were void as against the appellant.

The district court has jurisdiction to review the referee's order under Title 11 U.S.C.A. § 67, sub. c, and this Court has jurisdiction to review the district court judgment under Title 11 U.S.C.A. § 47.

The facts in this case are relatively simple and not in dispute. Prior to bankruptcy Dinsmore Equipment Company, a corporation, was engaged in the business of retail selling and leasing of construction equipment at Los Angeles, California. On November 9, 1956 the corporation executed a promissory note dated November 8, 1956, in the principal sum of $10,000, payable to the Small Business Administration, an agency of the United States operating directly under the executive branch of the government, pursuant to the provisions contained in Title 15 U.S.C.A. §§ 631 to 645, inclusive. On November 9, 1956 a chattel mortgage dated November 8, 1956 was executed as security for said note and "all sums that may be advanced * * * by the mortgagee to or on behalf of the mortgagor * * *; also all present and future demands * * * which mortgagee * * * may have against the mortgagor * * *, or whether existing at the time of the execution of this mortgage or arising thereafter; provided that the maximum amount to be secured and remaining unpaid at any one time shall not exceed the total sum of $15,000." The mortgage covered specified machinery and equipment "together with all additions, substitutions, replacements, improvements and repairs to said property, * * * and all furniture * * * and personal property of any * * * kind * * * hereafter placed" on the premises of the mortgagor. On November 9, 1956 the note and mortgage were deposited with the Small Business Administration.

On November 9, 1956 a "Notice of Intention to Chattel Mortgage" was executed by the corporation and was recorded on that date in the office of the County Recorder of Los Angeles County. The notice recited that Dinsmore Equipment Company intended to mortgage "all machinery, equipment, furniture and fixtures now owned and hereafter acquired" to the Small Business Administration, and that the consideration for the mortgage would be paid 12 days later, on November 21, 1956, at the Los Angeles office of the Small Business Administration.

The chattel mortgage was recorded by the mortgagee in the office of the County Recorder of Los Angeles County, California on November 16, 1956, seven days after the recordation of the "Notice of Intention to Chattel Mortgage".

On November 21, 1956 the Small Business Administration disbursed to mortgagor the sum of $5,850. On December 28, 1956 the additional sum of $2,150 was paid by means of a government warrant made payable jointly to the corporation and a supplier from whom the corporation had purchased a gas generator on open account on or about December 17, 1956. Final disbursement of $2,000 was made by the Small Business Administration to the corporation on January 4, 1957.

On or about December 17, 1956 a new chattel mortgage was executed by Dinsmore Equipment Company covering the gas generator. This mortgage was recorded on December 20, 1956. Payment of this account was made by the sum of $2,150 above mentioned, which was disbursed on December 28, 1956. No notice of intention to chattel mortgage was given, recorded or published in connection with this second chattel mortgage. Appellant concedes that if the mortgage dated November 8, 1956 is valid the gas generator would be covered by said chattel mortgage as "after acquired" property. Appellee does not concede the converse, however. It is appellee's position that if the first chattel mortgage is found invalid, the second mortgage is valid as a "purchase money mortgage" and there-

fore without the scope of Section 3440.1 of the Civil Code of the State of California.

Reference hereafter will be mainly to the first chattel mortgage.

The Dinsmore Equipment Company was adjudicated a bankrupt on May 13, 1957, and on the 5th day of June, 1957, appellant, A. J. Bumb, was appointed and qualified as trustee of the bankrupt estate. On July 11, 1957 appellant petitioned the bankruptcy court for an order directed to the Small Business Administration to show cause why an order should not be made declaring and decreeing that the chattel mortgages above mentioned are void as against the appellant.

It was and is the position of the appellant that the above mentioned chattel mortgages are void as against him in that: (a) they were not executed in full compliance with the provisions of Section 3440.1 of the Civil Code of the State of California, commonly known as the "bulk sales" statute; and (b) that there was a substantial deviation in the manner of payment of the consideration from the mode set forth in the notice of intention to mortgage.

It is undisputed that, prior to the recordation of each mortgage, Dinsmore Equipment Company was indebted to "existing creditors" having claims in excess of $6,000. The appellant stands in the shoes of these creditors under the provisions of Section 70, sub. e(1) of the Bankruptcy Act, Title 11 U.S.C.A. § 110, sub. e(1).[1]

The Small Business Administration opposed the order to show cause on two grounds: first that there had been substantial compliance with the provisions of the "bulk sales" law, and second, that any purported failure to comply with the provisions of the "bulk sales" law is immaterial since the Small Business Administration is a federal agency and the validity of its security is to be tested by federal as distinguished from state law. The referee in bankruptcy ruled in favor of the Small Business Administration on both grounds. The district court, however, in affirming the order of the referee, relied only on the first ground. Out of these contentions arise the two questions of law presented on this appeal.

On the 21st day of May, 1959, this Court ordered that the United States of America be substituted for the Small Business Administration, as appellee, on this appeal.

The provisions of the "bulk sales" statute, insofar as they are pertinent, are as follows:

> Section 3440.1. "* * * [the] mortgage of the fixtures or store equipment of a * * * retail or wholesale merchant, is conclusively presumed fraudulent and void as against the existing creditors of the * * * mortgagor, unless before the consummation of the * * * mortgage, the * * * mortgagor * * * or mortgagee does all of the following:

> "(a) Records at least 10 days before the consummation of the * * mortgage, in the office of the county recorder * * * a notice of the intended * * * mortgage, which states the name and address of the intended * * * mortgagor and the name and address of the intended * * * mortgagee. The notice shall contain a general statement of the character of the merchandise or property intended to be * * * mortgaged, and show the date and place where the purchase price or consideration is to be paid.

> "(b) Publishes at least once a copy of the notice in a newspaper of general circulation * * *. The publication shall be completed not

---

[1]. This section provides: "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor."

less than five days before the date of the intended * * * mortgage. * * * "

It is undisputed:

(a) That the note and mortgage were delivered to the mortgagor on November 9, 1956, more than ten days prior to the date fixed in the recorded notice of intention to mortgage. Appellee contends that the delivery was conditioned on the subsequent payment of the consideration which made the delivery conditional.

(b) That the mortgage was recorded on November 16, 1956, seven days after the recordation of the notice of intent to mortgage, and four days prior to the date fixed for payment of the consideration.

(c) That only a portion of the consideration, to-wit $5,850 of a total consideration of $10,000 to be paid, was paid on November 21, 1956, the balance being paid in two installments, the first installment of $2,150 which was paid jointly to the mortgagor and the supplier of the gas generator which is the subject of the second mortgage being paid 37 days after November 21, 1956, and the final installment of $2,000 being paid 44 days after November 21, 1956.

We have reached the conclusion that the chattel mortgage of November 8, 1956 is void under California law on the ground that there was a substantial deviation in the manner of the payment of the consideration from the mode set forth in the notice of intention to mortgage. Having reached such conclusion it becomes unnecessary for us to pass upon the question as to whether such mortgage was executed in substantial compliance with the provisions of Section 3440.1.

■ The parties agree that Section 3440.1 was enacted for the benefit of creditors of retail and wholesale merchants.[2] In Jeffery v. Volberg, 1958, 159 Cal.App.2d 815, at page 818, 324 P.2d 964, at page 966, it is stated:

"By the great weight of authority bulk sales statutes are for the benefit of creditors and not for the benefit of the purchaser and do not in any way affect the validity of a sale as between the immediate parties. [Citations omitted.]"

The good faith of the parties becomes immaterial when there is a failure to comply with the requirements of the "bulk sales" statute. Calkins v. Howard, 2 Cal.App. 233, 83 P. 280; Markwell & Co. v. Lynch, 9 Cir., 1940, 114 F.2d 373.

■ The object of the statute is: (1) to furnish creditors of the intended mortgagor the period of at least ten days within which to levy attachment or execution on the property to be mortgaged, and (2) to garnish or levy on the proceeds of the mortgage in the event provision is not made for the payment of the claims presented.

■ Appellee contends that the payment of the consideration was substantially in accordance with the recorded notice. We cannot agree with such contention. The notice stated that the consideration for said chattel mortgage is to be paid on the 21st day of November, 1956. The undisputed fact is that only 58½ per cent of the consideration to be paid was paid on that date. 21½ per cent of the consideration was paid 37 days later by government warrant made payable jointly to the mortgagor and one of its creditors. 20 per cent of the consideration was paid 44 days late. Appellee argues that the recorded notice did not represent that the entire $10,000 would be paid on November 21, 1956, nor did it specify the kind or amount of consideration to be paid. It is undisputed that the consideration to be paid for the chattel mortgage was $10,000. The notice stated that the consideration would be paid on the 21st day of November, 1956. The only reasonable interpretation which can be placed on the notice is that the entire consideration to be paid would be paid in lawful money of the United States on November 21, 1956. If the consideration to be paid was to be paid in installments the notice should have so stated,

2. See Ring, "Bulk Sales Problems in California", 42 Cal.Law Review 579 (1954).

and if the consideration was to be other than lawful money of the United States the notice should likewise have so stated. Appellee further argues that since it does not appear in the record that any of the creditors of Dinsmore Equipment Company appeared at the office of the Small Business Administration on November 21, 1956, it must be assumed that none of them was misled by the manner in which the consideration was paid. In our view such latter fact is immaterial. While this precise point has not been passed upon by the reviewing courts of the State of California, our views find persuasive support in Mitchell v. Setzler, 84 Cal.App.2d 716, 191 P.2d 523. In that case the notice of intention to engage in a bulk sale stipulated that consideration of the sale would be paid at a certain bank on August 20th. No payment at all was made on that date. Without a new notice of intention having been recorded the consideration was paid on August 27th. The court ruled the sale invalid, stating at page 720 of 84 Cal. App.2d at page 526 of 191 P.2d:

"The notice became a nullity when the sale was not consummated at the time and place specified. Appellants' contention appears to be that respondent, having had the statutory notice of the intention to sell, had an opportunity to levy execution and lost his right by failing to do so before the sale was made. The statute may not be so construed. In order that title may pass, free from claims of the creditors of the seller, the sale must be made substantially as stated in the notice. The creditor is thus afforded an opportunity to present his claim for payment and, if payment is not arranged, to levy upon the money, when it passes to the seller, instead of upon the property. A sale made at another time or place and without a new notice is not made in substantial compliance with the statutory method and is not protected. The construction of the statute urged by appellants would largely destroy its ef-

ficacy and defeat its purpose to afford a method of collection without the necessity of legal action. It would also point out an effective method by which unscrupulous debtors could make secret dispositions of their property in fraud of creditors who were relying upon the terms of the statutory notice. Appellants failed to prove compliance with the statute sufficient to establish a title protected against the claims of the creditors of the sellers. The sale was therefore void as to respondent, under section 3440, insofar as it involved the transfer of any interest of Barrett, Sr."

 The purpose of Section 3440.1 is to protect creditors. The installment method of payment of the consideration in this case, and the fact that part of the consideration was effected by a government warrant on which the mortgagor was only a co-payee with one of its suppliers, operated to hinder, delay and make more difficult the opportunity of creditors to satisfy their claims out of the consideration which was paid for the chattel mortgage. To permit such substantial departure as occurred in the instant case would defeat the purpose of the statute to protect creditors, and in the language of Mitchell v. Setzler, supra, "would also point out an effective method by which unscrupulous debtors could make secret dispositions of their property in fraud of creditors who were relying upon the terms of the statutory notice."

We will now consider appellee's contention that any failure to comply with the provisions of Section 3440.1 is immaterial since the Small Business Administration is a federal agency and the validity of its security is to be tested by federal as distinguished from state law. At the outset of the discussion on this phase of the case, the position of the appellee should be stated:

"We do not contend, * * *, that the United States need not comply with state statutes requiring recordation of executed mortgages.

Chattel mortgage recording statutes, now in effect in all of the states, further the policy against secret liens which, appellant correctly points out, has long been recognized in our jurisprudence. By substituting public recordation for the common law requirement that delivery and possession of the encumbered property was essential to the validity of a chattel mortgage, these statutes achieve a result which is 'in obedience to the wants of trade, which deem it beneficial to the community that the owners of personal property should be able to make *bona fide* mortgages of it, to secure creditors, without any actual change of possession.' Robinson v. Elliott [22 Wall. 513], 89 U.S. 513, 523, [22 L.Ed. 758]. For these reasons, as the Court's opinion in View Crest observes, it may frequently be 'commercially convenient' to adopt state recording systems in connection with federal lending or insurance programs.[13]

Appellee concedes that the Dinsmore Equipment Company was engaged in the business of retail selling and leasing equipment. It is clear that ordinarily any chattel mortgage executed by it would be within the purview of Section 3440.1, and accordingly that the validity of any such chattel mortgage would be dependent upon compliance with the provisions of said section. There can be no question that if a private party (or a private lending agency whose operations are nationwide) had made the loan in question instead of the Small Business Administration, the validity of its chattel mortgage would be tested by compliance with the provisions of Section 3440.1. Said section is a type of recording statute designed for the protection of creditors of retail or wholesale merchants who intend to make a bulk sales transaction.

It is unquestioned by us that the authority of the Small Business Administration to make the loan in question and to take the chattel mortgages as security therefor was derived from the laws of the United States. It is clear, therefore, that if the validity of the chattel mortgages are to be tested by the provisions of Section 3440.1, said section does not apply by its own force but it applies because Congress or the federal courts adopt it to further federal policy. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838; United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; United States v. View Crest Garden Apartments, Inc., 9 Cir., 1959, 268 F.2d 380, certiorari denied 1959, 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120; United States v. Matthews, 9 Cir., 1957, 244 F.2d 626; McKnight v. United States, 9 Cir., 1958, 259 F.2d 540.

The parties agree that Congress has enacted no legislation which establishes a federal rule for the acquisition of security interests by the Small Business Administration, or any uniform or other system for the recording of such security interests. We find in the legislation no Congressional intent to exempt such security interests from the requirements of local law which govern the validity of such security interests in respect to all other lenders. In view of this situation we must observe the admonition of the Supreme Court of the United States that "In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards." Clearfield Trust Co. v. United States, supra, 318 U.S. at page 367, 63 S.Ct. at page 575.

Under the rationale of the Clearfield case local laws may be adopted as the federal rule in appropriate situations. In this respect the Supreme Court stated in the Clearfield case at page 367 of 318

"13. 268 F.2d at [page] 383. In other related situations, however, the United States is clearly not subject to state recording laws. United States v. Allegheny County, 322 U.S. 174, 183 [64 S.Ct. 908, 88 L.Ed. 1209] ; In the Matter of American Boiler Works, 220 F.2d 319 (C.A. 3) ; In re Read-York [Inc.], 152 F.2d 313 (C.A. 7)."

U.S., at page 575 of 63 S.Ct. "In our choice of the applicable federal rule we have occasionally selected state law. See Royal Indemnity Co. v. United States, supra [313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361]." In United States v. View Crest Garden Apartments, Inc., supra, this Court stated at page 382 of 268 F. 2d: " * * * it is commercially convenient to adopt state law as the federal rule, and when no federal policy would be impaired, local rules can be effectively utilized." In rejecting the adoption of state law in the Clearfield case, the Court stated at page 367 of 318 U.S., at page 575 of 63 S.Ct.:

> "But reasons which may make state law at times the appropriate federal rule are singularly inappropriate here. The issuance of commercial paper by the United States is on a vast scale and transactions in that paper from issuance to payment will commonly occur in several states. The application of state law, even without the conflict of laws rules of the forum, would subject the rights and duties of the United States to exceptional uncertainty. It would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states. The desirability of a uniform rule is plain."

In considering the Clearfield case, it should be borne in mind that no question was involved in that case as to the validity of the instrument which the United States had issued, and the Court there was dealing with a remedy which local law had purportedly taken from it.

Appellee urges that "the federal interest at stake in this litigation requires the selection of a uniform federal rule. The need for such a rule is suggested by the fact that SBA's lending activities * * are conducted on an extensive nationwide basis. Moreover, application of state bulk sales laws to the security transactions of SBA would impair federal policy, burden and inconvenience the agency in its operations, and 'lead to great diversity in results by making identical trans-

actions subject to the vagaries of the laws of the several states.' Clearfield Trust Co. v. United States, 318 U.S. 363, 367 [63 S.Ct. 573, 87 L.Ed. 838]."

In adopting the appropriate rule of law which shall govern in this case it must be kept in mind that Section 3440.1 regulates only the manner of acquisition of a valid security interest, and does not purport to regulate the remedy of the mortgagee after default by the mortgagor in foreclosing the validly created security interest and liquidating the loan which the chattel mortgage was given to secure. This distinction was clearly recognized in United States v. View Crest Garden Apartments, Inc., supra. In that case the mortgage which covered real property located in the State of Washington had been executed in full conformity with the laws of said state. This Court stated at page 383 of 268 F.2d:

> "Thus state recording acts interfere with no federal policy as there is no federal recording system for the type of mortgages here involved."

The Court then stated at page 383 of 268 F.2d:

> "A different set of factors come into play when the planning stage and the working stages of the agreement have been terminated. After a default the sole situation presented is one of remedies. Commercial convenience in utilizing local forms and recording devices familiar to the community is no longer a significant factor. Now the federal policy to protect the treasury and to promote the security of federal investment which in turn promotes the prime purpose of the Act—to facilitate the building of homes by the use of federal credit—becomes predominant. Local rules limiting the effectiveness of the remedies available to the United States for breach of a federal duty can not be adopted."

We are unable to see in what manner local requirements governing the creation of a valid security interest interfere with federal policy to any greater degree than

the requirement that the prospective borrower from the Small Business Administration meet other reasonable requirements before he becomes a debtor of the United States.

The Small Business Administration is under no compulsion to risk the credit of the United States. Title 15 U.S.C.A. § 636(a) (7) provides that "All loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment." To require advance notice to the creditors of a prospective borrower so that they may protect their claims against the borrower imposes no undue hardship on the Small Business Administration when considered in the light of the fact the policy of all states of the Union is to give to such creditors some modicum of protection. Bulk sales statutes were first enacted in this country at the turn of the century and within a relatively short period of time practically every state in the Union had one.[3] These statutes have a uniform purpose, i. e., to prevent a debtor from selling all his business assets and absconding with the sale proceeds, without giving advance notice to his creditors. They are designed to protect these existing creditors from such fraudulent transactions, by requiring, at a minimum, that advance notice of a proposed transfer be given. Weintraub and Levin, "Bulk Sales Law and Adequate Protection of Creditors," 65 Harvard L. 418. It must be assumed from such universal enactment of the bulk sales statutes that the demands of commerce found such laws either necessary or beneficial to the carrying on of trade. It must be further assumed that creditors of prospective borrowers from the Small Business Administration are familiar with and have grown accustomed to the protection afforded to them under the laws of their own states. To adopt a rule which would exempt the Small Business Administration from the well established policy of all the states of the Union should not be done except under the most compelling reasons of federal policy. This is especially true since under Title 15 U.S. C.A. § 636(a) (1), which provides "No financial assistance shall be extended pursuant to this subsection unless the financial assistance applied for is not otherwise available on reasonable terms." Such a borrower is generally the one against whom the creditors are entitled to the most protection.

It is true that the Small Business Administration operates throughout the United States, but such fact raises no presumption of the desirability of a uniform federal rule with respect to the validity of chattel mortgages in pursuance of the lending program of the Small Business Administration. The largeness of the business of the Small Business Administration offers no excuse for failure to comply with reasonable requirements of local law, which are designed to protect local creditors against undisclosed action by their local debtors which impair the value of their claims. It must be assumed that the Small Business Administration maintains competent personnel familiar with the laws of the various states in which it conducts business, and who are advised of the steps required by local law in order to acquire a valid security interest within the various states. In acquiring security interests, the Small Business Administration is engaging in local activity and in an essentially local transaction. We are unable to conclude that any federal policy in this case requires us to override the sound and well-established policy of the several states which have a vital interest in the protection of local property rights and local creditor citizens.

We hold that the Small Business Administration as an intended mortgagee of personal property located in the State of California in a bulk sales transaction is not exempt from the pertinent provisions of Section 3440.1. Accordingly the chattel mortgage dated November 8, 1956 is conclusively presumed fraudulent and void as against the appellant for the reasons hereinabove set forth.

3. See Billig, "Bulk Sales Laws: A Study in Economic Adjustment," 77 U.Pa.L.Rev. 72.

The judgment of the district court, affirming the order of the referee in bankruptcy decreeing that the chattel mortgage dated November 8, 1956, is valid, is reversed.

It is further ordered that the judgment of the district court affirming the order of the referee in bankruptcy that the chattel mortgage dated December 17, 1956 is valid, is vacated and set aside, and the cause is remanded to the district court for appropriate proceedings to determine the validity of said chattel mortgage in a manner consistent with the views herein expressed.