UNITED STATES of America,
Appellee,

v.

Marion H. MacKENZIE et
al., Appellants.

UNITED STATES of America,
Appellee,

v.

ENGINE SERVICE CO., INC., an Arizona Corporation et al., Appellants.

Nos. 71–1925, 71–1574.

United States Court of Appeals,
Ninth Circuit.

Jan. 13, 1975.

See also 9 Cir., 474 F.2d 1008.

Frederick Steiner, Jr., Snell & Wilmer (argued in 71–1574), Phoenix, Ariz., Michael K. Halley (argued in 71–1925), Reno, Nev., for appellants.

Stephen M. McNamee, Asst. U. S. Atty. (argued in 1574), Phoenix, Ariz., Stephen Eilpren, Atty., Dept. of Justice, Washington, D. C. (argued in 1925), for appellee.

Before CHAMBERS, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE and SNEED, Circuit Judges.

## OPINION

HUFSTEDLER, Circuit Judge:

Upon foreclosure of these mortgages the courts below denied appellants the protection of state laws which would respectively have limited the deficiency judgment against MacKenzie and given Engine Service Co., Inc., redemption rights in the foreclosed property. We have taken these cases en banc to resolve the question whether federal law defers to or adopts these state laws when the creditor is the federal government and the property involved is security for loans made by the Small Business Administration ("SBA").

In both cases the Government through foreclosure of its security obtained advantages that the laws of Nevada and Arizona would clearly have denied to private creditors. No applicable federal statute or administrative regulation expressly establishes the rights and duties of the Government and the debtor upon the Government's foreclosing security for an SBA loan. Thus no federal statute nor regulation nullifies these debtor protections in the SBA context, and no provision in the underlying contracts purported to do so. Nor should we create federal law by implication that is antithetical to state laws protecting debtors unless doing so is necessary to achieve the overriding purposes of Congress in enacting the statutes under which the loans were made or to preserve some other paramount federal interest. Because we conclude that the congressional purpose in enacting the SBA legislation is not impaired by federal deference to the state laws involved here and because no other federal interest justifies refusal to respect the state interests reflected in them, we hold that these debtors had the protection of the state laws which they unsuccessfully asserted below.

In *MacKenzie,* SBA made a $150,000 loan to a Nevada corporation. MacKenzie guaranteed the loan and secured it by a deed of trust on his Nevada real property. When the principal obligor defaulted, the Government brought an action against MacKenzie in federal court to foreclose the deed of trust and to recover any deficiency remaining after the sale. The court ordered foreclosure, and the Government made a credit bid for $34,000.

Upon the Government's motion, the court confirmed the sale and ordered an evidentiary hearing to determine the fair market value of the property, following the practice under Nevada law. (Nev. Rev.Stat. § 40.457.) At the hearing the parties stipulated that the fair market value on the date of foreclosure was $50,550. If federal law defers to Nevada law, the deficiency would have had to be limited to the difference between the unpaid balance of the loan and the fair market value of the property at the date of foreclosure. (Nev.Rev.Stat. §§ 40.455, 40.457, 40.459.) The district court refused to apply the Nevada law and entered a deficiency judgment for $89,-907.35, the difference between the bid-in price on the foreclosure sale and the unpaid balance of the obligation. The result was that the deficiency judgment exceeded the amount allowed under Nevada law by $16,550 plus interest.

*Engine Service Co., Inc.* (Engine Service) presents the same choice-of-law problem in a slightly different context. The factual background is complex, but the essential features can be briefly stated. Mr. and Mrs. Smith guaranteed an SBA loan to Engine Service and secured their guaranty by a realty mortgage on their home and farm. All of the transactions and the real property involved were in Arizona.

When Engine Service defaulted on its promissory note, the Government brought an action against it on the note and sought foreclosure of the security that Engine Service had given. The Government joined the Smiths, who were sued on their guaranty for any de-

ficiency that might exist after Engine Service's assets were sold. The Government filed motions for summary judgment against Engine Service for $187,561.50 principal plus interest on the note and for foreclosure of the security that it had given, and against the Smiths on their guaranty if the proceeds from the sale of the security were inadequate to satisfy the judgment. Engine Service and the Smiths stipulated to a judgment and a decree of foreclosure against Engine Service only; the stipulation preserved for later litigation the question whether the Engine Service's foreclosure should be made with or without redemption right.

The court entered judgment against Engine Service and retained jurisdiction to decide the Smiths' liability. The Government made a credit bid of $46,000 for the Engine Service property at the marshal's sale, which the court ordered to be without Arizona redemption rights. The Government resold the property to a third person shortly thereafter for a much higher price. The district court confirmed the sale to the Government, fixed the deficiency at $158,286 (the difference between the unpaid amount of the obligation and the bid-in price), and granted summary judgment against the Smiths for that sum. The court also denied the Smiths' motion to supplement the record by proof that the fair market value at the time of the foreclosure sale was over $100,000.

The question whether federal law should defer to state laws protecting debtors when the Government seeks to recover a debt generated by an SBA loan is not novel. The Supreme Court answered the question affirmatively in United States v. Yazell (1966) 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404. In our cases, as in Yazell, the SBA loans were "individually negotiated in painfully particularized detail," (id. at 345–46, 86 S.Ct. at 503) and, by thwarting debtor protections imposed by state law, the Government obtained an unconscionable

advantage over debtors by gaining rights that no other creditor could have had.

 Yazell makes clear these cases are to be decided in light of the state and federal policies at stake. (Id. at 352, 86 S.Ct. 500.) The underlying purpose of both the Nevada and Arizona statutes is to prevent the injustice that occurs when a debtor's property is sold on foreclosure sale for a price significantly less than its fair market value. The Nevada mechanism is to confine the amount of a recoverable deficiency to the difference between the fair market value of the property on foreclosure and the amount of the unpaid obligation, thus making economically fruitless unconscionably low bidding by the creditor. The Arizona device is to secure to the debtor redemption rights and thus pose an economic threat to prospective purchasers, including the creditor, that an artificially low bid can be defeated by redemption.[1]

The two federal interests involved are the protection of the federal fisc and service of the congressional purpose in enacting the Small Business Act to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise . . . and to maintain and strengthen the over-all economy of the Nation." (15 U.S.C. § 631(a).)

The governmental interests in Yazell and in our cases are identical. We can justify a departure from Yazell only if we can reasonably conclude that a state's interests in protecting its debtors from inflated deficiency judgments and from unfair prices at foreclosure sales are of lesser moment to the states concerned than was the "quaint doctrine of coverture" (United States v. Yazell, supra, 382 U.S. at 343, 86 S.Ct. 500) to the State of Texas, or that the former weigh less heavily than the latter when each is balanced against the same federal interests.

 We cannot say that Nevada's and Arizona's concern in protecting their

---

1. See generally Durfee & Doddridge, Redemption From Foreclosure Sale, 23 Mich.L.Rev. 825, 827–34 (1925); Note, Redemption From Judicial Sales, 5 U.Chi.L.Rev. 625, 626 (1938).

debtors from economic overreaching in foreclosure sales is less weighty than Texas' interest (whether spawned by chivalry or chauvinism) in shielding a married woman's property from debts that she acquired.

Recognition of the debtor protections before us does not pose any significant threat to the legitimate interests of the Government in having its loans repaid.[2] Devices to assure that fair market prices are received at foreclosure sales redound to its benefit. Depriving the Government of potential "double recoveries" created by artificially large deficiencies that it has caused takes away nothing to which it is entitled.[3]

In fact, the application of the debtor protections before us encourages Congress' announced aims in enacting the SBA legislation. Congress wanted to assist small business and, perforce, small businessmen "insofar as is possible." To deprive those very businessmen of protection from economic overreaching will adversely affect their ability to survive a foreclosure and to start afresh and will potentially deter those whom Congress wanted to help as much as possible from seeking SBA loans.

The Government's reliance on United States v. Stadium Apartments, Inc. (9th Cir. 1970) 425 F.2d 358 to support its contention that state law should not be deferred to is unavailing. *Stadium Apartments, Inc.* held that federal law did not adopt state law granting post-foreclosure sale rights of redemption when the Federal Housing Authority forecloses a mortgage which it has guaranteed. The considerations that prompted that conclusion are different from those that appear in the SBA context, excepting that both situations involve state debtor protections and efforts to collect federal debts after foreclosure. As the court observed in *Yazell*:

> "None of the cases in which this Court has devised and applied a federal principle of law superseding state law involved an issue arising from an individually negotiated contract." (382 U.S. at 353, 86 S.Ct. at 507.)

Unlike the FHA guarantees treated in *Stadium Apartments, Inc.*, SBA transactions are individually tailored.[4]

In addition, *Stadium Apartments, Inc.* expressly distinguished *Yazell* (425 F.2d at 363), and relied heavily upon United States v. View Crest Garden Apartments, Inc. (9th Cir. 1959) 268 F.2d 380. *Yazell* distinguished *View Crest Garden Apartments, Inc.* (382 U.S. at 348 n. 15, 86 S.Ct. 500) and approved Bumb v. United States (9th Cir. 1960) 276 F.2d 729, in which we held California's "bulk sales" statute applicable to an SBA transaction (382 U.S. at 347, 86 S.Ct. 500). Here *Yazell* controls and requires deference to the state laws before us.

Nothing more needs to be said to dispose of *MacKenzie*. But we must add that, apart from the *Yazell* issue, *Engine Service* must be reversed for the further reason that material issues of fact were

---

**2.** Congress has itself indicated that the SBA need not recoup every cent expended. Congress required only that "[a]ll loans made under this subsection shall be of such sound value or so secured as *reasonably* to assure repayment." (15 U.S.C. § 636(a)(7) (emphasis added).) *See also* 15 U.S.C. § 646, which subordinates SBA security interests to certain state tax liens normally not prior to federal claims. (City of Sherman v. United States (5th Cir. 1968) 400 F.2d 373.) This provision was added in part to clarify "the position of the SBA in actions brought to realize its interest in the assets of borrowers who have defaulted under SBA loans." (S.Rep.No.1714, 85th Cong., 2d Sess. (1958), 1958 U.S.Code Cong. & Admin.News, Vol. 2, at pp. 3071, 3080.) At the very least the attitude underlying §§ 636(a)(7) and 646 is consistent with the claims of the appellants here.

**3.** It is worthy of note that Congress, recognizing the possibilities for abuse inherent in foreclosure sales, has provided that the United States shall have a right of redemption upon foreclosure of a lien prior to its own. (28 U.S.C. § 2410(c); Equity Mortgage Corp. v. Loftus (E.D.Va.1970) 323 F.Supp. 144.)

**4.** The majority of the court is of the view that the merits of *Stadium Apartments, Inc.*, are not before us; we express no view on the merits of that case.

raised that foreclosed summary judgment against the Smiths.

Reversed and remanded.

ELY, Circuit Judge (Joined by Circuit Judge BROWNING) concurring:

I concur in the majority's opinion because, in my view, it comports with my dissenting opinions in United States v. Stadium Apartments, Inc., 425 F.2d 358, 367 (9th Cir. 1970), and Branden v. Driver, 441 F.2d 1171 (9th Cir. 1971).

In the present cases, the loans in question were made by the Small Business Administration (SBA). In *Stadium Apartments*, the loan was made by the Federal Housing Authority (FHA), and in *Branden*, by the Veterans Administration (VA). The lending documents in all the cases specified, in effect, that the loans were made subject to the laws of the states in which the real property was situated. In *Stadium Apartments, supra*, the majority held that Idaho's redemption statute could not be invoked by the mortgagor upon the FHA's foreclosure of the mortgage. In *Branden, supra*, the majority held that VA, the mortgagee, might take a deficiency judgment upon its foreclosure of a purchase-money mortgage on California property, despite a California statute prohibiting such a deficiency judgment. For comments generally supporting my dissenting views in those cases, see Note, Federal Courts—Choice of Controlling Law in Cases Involving Federally Insured Mortgages, 49 N.C.L.Rev. 358 (1971); Note, Property—Mortgages—State Redemption Statutes Not Applicable to Foreclosure by the United States on FHA Insured Mortgage, 23 Vand.L. Rev. 1384 (1970); Note, Federal Courts—Refusal to Apply State Redemption Statute to FHA-Insured Mortgage Foreclosure, 17 Wayne L.Rev. 178 (1971).

I respectfully submit that there is no such sufficient difference in loans made by the SBA, as in the present appeals, as to justify a more favorable treatment to the debtors than that given to the debtors in *Stadium Apartments* and *Branden*. Under United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), the pertinent state law should control in all four cases. It therefore seems to me that the majority, in reaching the correct result in the cases now before us, should have, in the interest of consistency, if not for the reasons expressed by me in *Stadium Apartments* and *Branden*, expressly overruled the holdings of those two cases.