UNITED STATES of America, Plaintiff,

v.

Mary Ann MARSHALL and David Marshall, her husband, Bert Adams, formerly known as Gordon Pontiac, Shaw Barton, Inc., and unknown owners, Defendants.

No. 76 C 1114.

United States District Court,
N. D. Illinois, E. D.

May 19, 1977.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., for plaintiff.

Mary Ann Marshall, pro se.

## MEMORANDUM OPINION

WILL, District Judge.

The plaintiff, United States of America, brings this action to foreclose certain mortgages which were executed as security for a Small Business Administration ("SBA") loan to defendants Mary Ann Marshall and David Marshall. The plaintiff now moves for summary judgment as to defendant Mary Ann Marshall. We grant this motion.

### I.

Plaintiff alleges that on or about December 3, 1971, defendants Mary Ann Marshall and David Marshall borrowed $31,000.00 from the SBA and executed a promissory note as evidence thereof. As security for the loan, plaintiff avers, these defendants executed a security agreement conveying to the SBA a security interest in all the inventory, machinery, equipment, furniture, and fixtures owned by them in the Illinois Academy of Beauty Culture. Further, it asserts that these defendants executed a mortgage for certain real property in Will County, Illinois. Plaintiff contends that the security interest in the business was perfected by the filing of a financing statement in the offices of the Illinois Secretary of State and the Recorder of Deeds of Will County, Illinois, and that the mortgage was duly recorded with the Recorder of Deeds of Will County.

In its complaint, plaintiff claims that Mary Ann Marshall and David Marshall have defaulted on the note and that $33,-836.12 is now owing to it. Besides the Marshalls, it names as defendants Bert Adams, formerly known as Gordon Pontiac, Shaw Barton, and "unknown owners" who may have interests in the real property in question. In its prayer for relief, it seeks a foreclosure of the mortgage and security agreement and an order that the defendants "be barred and foreclosed of all right, title, and interest, and statutory right and equity of redemption in and to said real and personal property."

On September 17, 1976, the Clerk of this court entered an order of default against all the defendants except Mary Ann Marshall. Ms. Marshall filed a *pro se* answer in which, for the most part, she admitted the allegations of the complaint. She stated,

The finds [*sic*] of fact of Small Business Administration are supported by substantial evidence and are conclusive.

Further, she asked for the dismissal of the complaint and

for judgment to be in favor of giving defendant a chance to redeem the described property as requested to the Small Business Administration.

### II.

In support of its motion for summary judgment, plaintiff attached the affidavit of Anthony Waratuke, a loan specialist for the SBA. This affidavit substantially repeats the allegations of the complaint. Ms. Marshall's answer to the motion was due on February 9, 1977. On March 18, 1977, we wrote her a letter, telling her that if she did not file an answering brief by April 1, 1977, we would rule on the motion based on the papers now before us. Further, we told her that if for some reason she could not submit an answer by that date, she should file a motion for an extension of time. She has not yet filed an answering brief or a request for an extension.

Since the affidavit of Waratuke is uncontested, we grant summary judgment as to liability for the plaintiff.

One issue remains, however—whether Ms. Marshall can have the right of redemption in the property. Both the promissory note and the mortgage provide that the signatories waived all rights of redemption. Under Illinois law, on the other hand, the right of redemption cannot be waived, either under a security agreement or a mortgage—even by express stipulation by the parties. *Ill.Rev.Stat.* ch. 26, § 9–506 (security agreements); *see generally, Indianapolis Morris Plan Corporation v. Karlen,* 28 N.Y.2d 30, 319 N.Y.S.2d 831, 268 N.E.2d 632 (1971). *Illinois Trust Co. of Paris v. Biba,* 328 Ill. 252, 159 N.E. 254, 258 (1927) (mortgages); *see generally, 2 Jones on Mortgag-*

es § 1326 (8th ed. 1928). Thus the question arises whether the language of the instruments or Illinois law should govern.

While it is clear that the applicable law in this case is federal, *United States v. Stadium Apartments, Inc.*, 425 F.2d 358, 360 (9th Cir.), *cert. denied*, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970), *United States v. View Crest Garden Apts., Inc.*, 268 F.2d 380, 382 (9th Cir.), *cert. denied,* 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959), *see generally, Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), the issue still remains whether we should adopt Illinois law as the federal rule in this case. *See United States v. Haddon,* 541 F.2d 777 (9th Cir. 1976). The government cannot take a "bootstrap" approach and argue that the instruments themselves are "federal law" since there is no federal statutory provision on the rights of an SBA debtor to redeem his property. While the instruments may indicate that the SBA document drafters believed redemption rights could be waived, it is for us to determine if, under federal law, they can validly be waived.

A Supreme Court decision and several Ninth Circuit opinions address analogous issues. In *United States v. Yazell,* 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), the SBA had made a "disaster loan" to Mr. and Mrs. Yazell. The note, which had been signed by both of them, was in default and the balance could not be satisfied either from Mr. Yazell's assets or from the "marital" property. The question was whether the Texas law of coverture, limiting the contractual powers of married women, was applicable and thus insulated Mrs. Yazell's separate property from levy of execution in connection with the debt. The Court held that the state law was applicable. The opinion stressed that allowing state exemption laws of this type to govern would have little effect on the federal fiscal interest; that state coverture restrictions are closely related to the state's legitimate interest in regulating family property arrangements; and that there is no overriding interest in nationwide uniformity on this issue. Most

importantly, the Court pointed out that the contracts in question were individually negotiated and tailored and thus entered into in contemplation of local laws. The Court stated,

. . . it must be emphasized that this was a custom-made, hand-tailored, specifically negotiated transaction. It was not a nationwide act of the Federal Government emanating in a single form from a single source. 382 U.S. at 347–48, 86 S.Ct. at 504.

In *United States v. Stadium Apartments, Inc., supra,* the Ninth Circuit faced an issue almost identical to ours: whether the Idaho redemption statute was applicable to a Federal Housing Authority ("FHA") foreclosure of a mortgage which it had guaranteed. The mortgage contained a provision waiving the benefit of all redemption laws. The court held that the state redemption statute was not applicable. The court indicated that the contract in that case, unlike the one in *Yazell,* was not individually negotiated. Further, it balanced the federal interests and state interests at stake and determined that the federal interest in having no redemption rights outweighed the state interest in having its laws applied.

In *United States v. MacKenzie,* 510 F.2d 39 (9th Cir. 1975), on the other hand, the Ninth Circuit, sitting *en banc,* held that state redemption laws could be applied in an SBA foreclosure on a promissory note. The court stated,

Recognition of the debtor protections before us does not pose any significant threat to the legitimate interests of the Government in having its loan repaid. Devices to assure that fair market prices are received at foreclosure sales rebound to its benefit. . . .

In fact, the application of the debtor protections before us encourages Congress' announced aims in enacting the SBA legislation. Congress wanted to assist small businesses, and, perforce small businessmen 'insofar as is possible.' To deprive those very businessmen of protection from economic overreaching will adversely affect their ability to survive a foreclo-

sure and to start afresh and will potentially deter those whom Congress wanted to help as much as possible from seeking SBA loans. 510 F.2d at 42.

While the court stated that it expressed no views as to the merits of *Stadium Apartments,* 510 F.2d at 42 n. 4, it attempted to distinguish that case. First, it noted that, unlike the FHA guarantees treated in *Stadium Apartments,* SBA transactions are individually tailored. Second, the court concluded that *Yazell* controlled this case and required deference to state law.

■ These cases, it can be argued, indicate that we should adopt state law only in those instances where the loans were individually negotiated and hand-tailored for the specific individual involved. Only in such cases, the argument would go, have the parties not bargained for preemption of state debtor protection policies. In the context of the instant case—where the instruments appear to be standard form documents—this argument would compel the rejection of Ms. Marshall's request for redemption rights. We do not, however, adopt this reading of the cases. The *en banc* decision in *MacKenzie* appears to limit *Stadium Apartments.*[1] *See United States v. Haddon Haciendas Co.,* 541 F.2d 777, 781 (9th Cir. 1976). It views the factual context of the transactions as only one of the factors to be considered in determining whether state law is applicable.[2] Other factors include the respective interests of the federal and state governments. The test then is to weigh all the relevant factors—the intent of the parties, the interest of the federal government, the interests of the state—to determine if we should adopt Illinois redemption law as the federal rule. The most important criterion, we believe,

is whether the state law can be given effect without either conflicting with federal policy or destroying needed uniformity in the pertinent federal law in its operation within the various states. *United States v. Stadium Apartments, Inc., supra* at 368 (Ely, J., dissenting).

Balancing the interests in this case, it is clear that a number of factors indicate that we should not adopt Illinois law. As noted above, there is no indication in the standard form instruments that the parties intended that we adopt state law as the federal rule in this case. Moreover, the policy of uniform operation of the SBA program would not be furthered by the use of Illinois law. As the majority pointed out in *Stadium Apartments,* state post-foreclosure redemption statutes vary widely from state to state. 425 F.2d at 364. For example, there is a split of authority as to whether the right of redemption can be waived. Thus, adoption of state redemption law would result in varying results depending on the state in which the foreclosure occurs.

■ On the whole, however, we believe that stronger policy considerations indicate that we should adopt the Illinois law that redemption rights cannot be waived in security agreements. Illinois' interest in protecting debtors' redemption rights does not conflict with federal policy underlying the Small Business Act. The Illinois system protects the debtor by posing an economic threat to prospective purchasers at a foreclosure sale, including the creditor, that an artificially low bid can be defeated by redemption. *United States v. MacKenzie, supra* at 41. As Judge Ely stated in his dissent in *Stadium Apartments,*

The objective of the redemption right is that the mortgagee or other bidder, if any, shall bid not less than the fair mar-

---

1. In fact, two concurring judges in *MacKenzie* were of the opinion that the majority opinion in that case and *Stadium Apartments* were irreconcilable and that the latter should be specifically overruled. 510 F.2d at 43.

2. Justice Harlan, in his concurring opinion in *Yazell,* stated that he placed "no reliance on the particularities of the negotiations between the parties respecting this loan." He added,

In my view, the conclusion that Texas law governs the issue before us is simply justified by the Court's appraisal of the competing state and federal interests at stake, irrespective of whether the parties negotiated with specific reference to Texas law. 382 U.S. at 358, 86 S.Ct. at 510.

ket value of the land, since otherwise the purchaser risks being divested of the land by redemption at less than its market price. 425 F.2d at 368.

This policy is consistent with the policies underlying the Small Business Act. The purpose of the Act is to "aid, counsel, assist, and protect, insofar as possible, the interests of small-business concerns in order to preserve free competitive enterprise . . and to maintain and strengthen the over-all economy of the Nation." 15 U.S.C. § 631(a).

As the court held in *MacKenzie*, allowing the right of redemption encourages the policy of helping small businessmen to survive foreclosure. 510 F.2d at 42. This policy is more important than the need for a uniform application of the SBA program. We conclude, then, that Illinois law should be adopted as the federal rule in this case. Accordingly, we hold that the Marshalls are entitled to the applicable periods of redemption under Illinois law with respect to real and personal property. *Ill.Rev.Stat.* ch. 77, § 18, and *Ill.Rev.Stat.* ch. 26, § 9–506.

As a final point, we note that if the SBA believes that there should be a uniform redemption policy for its loan program, it can seek legislation authorizing it to require waiver as a loan condition or, alternatively, it has the power to adopt a regulation to this effect. *See* 15 U.S.C. § 634(b)(6). In fact, the SBA has already adopted various regulations concerning foreclosures and sales of collateral. 13 C.F.R. §§ 122.24 and 122.25. The waiver provisions here are neither authorized by congressional enactment nor pursuant to SBA's power to issue regulations after appropriate hearing and other administrative proceedings. They are the result merely of the internal drafting of standard form agreements. We believe that policies which affect basic property rights, such as the right of redemption, should be formally adopted after careful consideration with an opportunity for public participation and not by the unilateral action of administrative agency staffs.

We, therefore, grant plaintiff's motion for summary judgment as to the foreclo-

sure of the security agreement and mortgage. We hold, however, that the various agreements did not defeat the rights of the parties to redeem the properties in question under Illinois law.

An appropriate order will enter.