**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**H. E. CRAIN and Ethel E. Crain, husband and wife, and Coconino County, Arizona, Defendants-Appellants.**

No. 76–1574.

United States Court of Appeals,
Ninth Circuit.

Jan. 17, 1979.

Moeller Henry & LaVelle (argued), Phoenix, Ariz., for defendants-appellants.

John F. Flynn, Asst. U. S. Atty. (argued), Phoenix, Ariz., for plaintiff-appellee.

Before CHOY and SNEED, Circuit Judges, and KELLEHER *, District Judge.

CHOY, Circuit Judge:

Harold and Ethel Crain appeal from the district court's summary judgment finding them liable on their personal guarantee of a Small Business Administration (SBA) loan and foreclosing the mortgage securing that guarantee. We affirm in part, and reverse and remand in part.

I

On January 12, 1968, the SBA loaned $100,000 to the Haining Lumber Company, Inc. Haining provided collateral for the loan. In addition, the loan was personally guaranteed by Harold Crain, then president of Haining, and his wife Ethel Crain, who owned 75% of Haining's stock. The guarantee was secured by a mortgage on certain real property belonging to the Crains. The guarantee was executed on a standard SBA form, while the mortgage securing the guarantee was on a standard title company form adapted for use in Arizona. The guarantee provided that the SBA could proceed against the guarantors upon default of the principal debtor without pursuing any rights it might have against the debtor.[1]

Subsequent to the loan, Haining was the subject of a reorganization proceeding in the bankruptcy court. An arrangement was approved whereby Mr. Crain withdrew from the management of Haining. However, the Crains' guarantee remained in effect.

Following reorganization, Haining defaulted on its SBA obligations. On June 20, 1974, the United States commenced a suit on the guarantee in behalf of the SBA.

The Crains asserted as one ground of defense that the SBA had negligently permitted Haining's collateral to be dissipated, thus discharging the Crains' guarantee liability under Arizona law. The United States moved for summary judgment and the Crains countered with a similar motion of their own. On November 19, 1975, the parties stipulated that their respective motions for summary judgment be determined on the basis of the single issue of whether the SBA had any obligation to proceed against Haining's collateral prior to taking action on the Crains' guarantee.

The district court granted the Government's motion for summary judgment, expressly holding that federal rather than state law governs the interpretation of an SBA loan guarantee, and that the language of the guarantee did not require that the SBA move against collateral pledged by Haining prior to bringing an action on the Crains' guarantee.

II

The issue presented is whether guarantors of an SBA loan can assert state law defenses to the Government's claim on their personal guarantee.

 Because this case involves the rights of the United States against private citizens with whom it has contracted—rights based on a loan transaction authorized by Congress, see 15 U.S.C. § 636—federal law is controlling. The fact that, as here, no constitutional or federal statutory provision disposes of the issue does not change this. "A federal court sitting in a non-diversity case such as this does not sit as a local tribunal. . . . Federal common law implements the federal Constitution and statutes, and is conditioned by them." *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 471–72, 62 S.Ct. 676, 686, 86 L.Ed. 956 (1942) (Jackson, J., concurring). The question thus turns on what the applicable federal law is.

---

* The Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

1. In relevant part the guarantee provides:
SBA shall not be required, prior to any such demand on, or payment by, the undersigned, to make any demand upon or pursue or exhaust any of its rights or remedies against the Debtor or others with respect to the payment of any of the Liabilities, or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral.

■ The federal courts are generally free to draw upon any and all traditional sources in developing federal common law. *United States v. Best,* 573 F.2d 1095, 1101 (9th Cir. 1978). Often state law is an appropriate source. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *Royal Indemnity Co. v. United States,* 313 U.S. 289, 296–97, 61 S.Ct. 995, 85 L.Ed. 1361 (1941); *Board of Commissioners v. United States,* 308 U.S. 343, 350–52, 60 S.Ct. 285, 84 L.Ed. 313 (1939); *United States v. Best,* 573 F.2d at 1102. Even when an "action arises under and is clearly determined by federal law, state law limiting the enforcement of a federal right is sometimes adopted as the federal rule." *United States v. Haddon Haciendas Co.,* 541 F.2d 777, 783 (9th Cir. 1976).

■ As stated in *Haddon,* whether or not state law will be adopted as the federal common law rule depends on "whether the state law can be given effect without . . conflicting with federal policy." *Id.* at 784, *quoting United States v. Stadium Apartments, Inc.,* 425 F.2d 358, 368 (9th Cir.) (Ely, C. J., dissenting), *cert. denied,* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970); *See United States v. Yazell,* 382 U.S. 341, 352–57, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966);

*Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 87 L.Ed. 838 (1943); *United States v. MacKenzie,* 510 F.2d 39, 41–42 (9th Cir. 1975) (en banc).[2] Conversely, rejection of the state rule should be avoided where the adoption of a different federal rule would unduly interfere with the state's interests. *United States v. Best,* 573 F.2d at 1102; *United States v. Haddon Haciendas Co.,* 541 F.2d at 785; *United States v. MacKenzie,* 510 F.2d at 41–42.

The United States urges that state law should not be adopted as federal common law in this case. The Government posits a strong public policy of promoting the security of federal investments and a need for uniform law governing the nationally-used guarantee contract involved in this case in support of its position.

In *United States v. MacKenzie,* a case involving the applicability of state law limiting the amount of deficiency judgments to federal foreclosures on mortgages securing SBA loans, this court pointed out that two federal interests were implicated in enforcing SBA loan contracts: protection of the federal fisc[3] and the congressional purpose in enacting the Small Business Act.[4] These

**2.** *Cf. United States v. Gish,* 559 F.2d 572 (9th Cir. 1977), where this court stated that an Alaska law prohibiting recovery of a deficiency judgment after summary foreclosure was not to be adopted by the federal courts in a case involving a disaster relief loan. We distinguished *Yazell, MacKenzie* and *Haddon* and based our decision on the confluence of three "critical" factors: contractual provisions dealing with deficiencies, applicable federal administrative regulations, and a federal statute dealing with the subject of deficiencies. *Id.* at 573.

However, had we been presented only with an applicable federal statute, the result necessarily would have been the same. The statute would obviate the need to develop a federal common law rule. *See D'Oench, Duhme & Co. v. FDIC,* 315 U.S. at 471–72, 62 S.Ct. 676. Thus, given the controlling federal statute in *Gish,* references to the importance of administrative regulations and the language of the contract are dicta.

Moreover, *Gish* by its own terms is concerned with the confluence of three factors and is inapposite to this case. There is no controlling federal statute here. And although the same federal regulations involved in *Gish* are

relevant here, they simply state a rule which this court has followed at least since *Haddon*: federal rather than state law governs the rights and liabilities of parties to SBA transactions. 13 C.F.R. §§ 101.1(d)(2), 101.1(d)(3); *see 559* F.2d at 574. The regulations do not indicate what the applicable federal law is. Finally, despite the fact that some of the contractual provisions in this case may arguably waive the Crains' state law defenses, they do not rise to the force of federal law and do not foreclose the question of what the federal rule is. *See United States v. Marshall,* 431 F.Supp. 888, 890 (N.D.Ill.1977) (Government cannot "bootstrap" and argue that instruments themselves constitute federal law).

**3.** 15 U.S.C. § 636 places several restrictions on the SBA's lending powers. 15 U.S.C. § 634(b) gives the SBA Administrator certain powers to enforce SBA loan agreements. Both of these statutes indicate Congress' concern for the federal purse in this area.

**4.** "It is the declared policy of the Congress that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of

same federal policies are at stake in the resolution of the question before us.[5]

The Arizona rule that the Crains contend should be adopted as federal law in this case requires that a creditor look first to any security provided by the primary debtor and take such reasonable actions to preserve that security as circumstances require. The creditor's failure to act to protect the value of security given by the principal gives the guarantor a defense against enforcement of his obligation under Arizona law. *See D. W. Jaquays & Co. v. First Security Bank,* 101 Ariz. 301, 419 P.2d 85 (1966), and discussion of Arizona law. *infra.*

Adoption of these state law defenses will not adversely affect either of the federal policies involved in this case. Rather, recognition of guarantor protections provided by Arizona law will make it easier for the SBA to find sureties, facilitating SBA objectives. By encouraging private guarantors, the SBA is relieved of a certain amount of financial risk it would otherwise be forced to bear. Nor does the protection granted by Arizona law jeopardize the Government's interest in having its loans repaid. If the principal's collateral proves insufficient to meet the debt, the SBA can look to the guarantor for the deficiency. Furthermore, the rejection of Arizona's rule in the name of uniformity would unnecessarily introduce a lack of uniformity into debtor-creditor relationships in that state. No federal interest requires such an intrusion into state regulation of commercial transactions.

There are no "clear and substantial interests of the National Government, which . . . will suffer major damage if the state law is applied." *United States v. Yazell,* 382 U.S. at 352, 86 S.Ct. at 507. Thus, following *Yazell, MacKenzie* and *Haddon,* the district court should have adopted Arizona law as the proper common law rule.

### III

Since the district court did not consider the effect of Arizona law in this case, the question arises whether this court may do so on appeal or whether, instead, a remand for this purpose is required.

If all necessary facts were of record and not in dispute, and the only remaining question was the effect of Arizona law, then this court could decide the case without remanding. *Hansen v. Morgan,* 582 F.2d 1214, 1217–18 (9th Cir. 1978); *see Lundgren v. Freeman,* 307 F.2d 104, 113–15 (9th Cir. 1962). However, if further exposition of facts or weighing of different facts in the record is necessary, remand is required. *See Hansen v. Morgan,* 582 F.2d at 1218.

The Crains' primary defense is based on the Arizona doctrine of equitable subrogation, which relieves the guarantor where the creditor has failed to act to protect the value of the security given by the primary debtor. *See D. W. Jaquays & Co. v. First Security Bank,* 101 Ariz. at 304–05, 419 P.2d at 88–89.

---

small-business concerns in order to preserve free competitive enterprise . . . and to maintain and strengthen the overall economy of the Nation." 15 U.S.C. § 631(a).

**5.** *Cf. United States v. Haddon Haciendas Co.,* 541 F.2d at 784–85, where we noted that the federal interest in the National Housing Act went further than protection of the public fisc. The National Housing Authority sought to hold two mortgagors personally liable for waste because of their failure to maintain the premises involved and failure to keep accurate records. The mortgagors claimed that California anti-deficiency laws barred such an action and should be adopted as federal law.

This court concluded that the federal interest in deterring "exploitive management of federally-insured projects and the resulting substandard and slum-like housing conditions that the NHA was designed to eliminate" would be harmed by adoption of California law in that case. The state rule would remove a powerful incentive for landlords to maintain their property and would make detection of exploitation difficult; rejection of it for purposes of NHA mortgages would not unduly intrude upon the state's debtor-creditor protection scheme. Thus, California's anti-deficiency law was rejected as the federal rule.

As an equitable defense, this doctrine may be applied despite any language in the guarantee contract; but in certain cases it may be waived, depending on what result is consistent with "justice and good conscience." *Kilpatrick v. Superior Court,* 105 Ariz. 413, 422, 466 P.2d 18, 27 (1970). Nonetheless, "[t]he right does not originate in contract, and it cannot lightly be destroyed by contract." *D. W. Jaquays & Co. v. First Security Bank,* 101 Ariz. at 305, 419 P.2d at 89.

Application of this equitable doctrine, and particularly whether this defense has been waived, requires a balancing of the equities dependent upon factual determinations not in the record before us. The parties conducted no discovery and there were no hearings or findings of fact on the issues of whether any collateral existed at the time of this action and whether the SBA in fact failed to act to preserve its value as security.

The Crains also claim certain statutory defenses, including a discharge of obligation under Ariz.Rev.Stat. § 12–1641.[6] The United States argues that these defenses are unavailable to appellants under *Austad v. United States,* 386 F.2d 147 (9th Cir. 1967).

In *Austad,* which involved only the applicability of § 12–1641, we did not reach the question of whether that statute should be adopted as federal law. Instead, we held that the statute's protection was waived by the standard SBA guarantee agreement involved in that case. The relevant language is set forth in the margin [7] and is identical to language found in the guarantee executed by the Crains.

While *Austad* is controlling as to the Crains' claim under § 12–1641, it does not address the question of whether this standard form language waived any defenses under Ariz.Rev.Stat. §§ 12–1642, 12–1643, 12–1646 and Ariz.R.Civ.P. 17(f), upon which appellants also rely. Since additional briefs and argument are necessary to a decision on the applicability of these other statutory defenses, and since additional factual development is required in any event on the issue of equitable subrogation, considerations of judicial economy counsel that we remand on the issues of all of the Crains' state law defenses, save the § 12–1641 defense.[8] Accordingly, we affirm only that portion of the trial court's judgment which denies the Crains any defense under § 12–1641.[9] The remainder of the judg-

---

**6.** Any person bound as surety upon a contract for payment of money or performance of an act, when the right of action has accrued, may require, by notice in writing, the creditor or obligee forthwith to bring an action upon the contract. If the creditor or obligee, not being under legal disability, fails to bring the action within sixty days after receiving the notice, and prosecute it to judgment and execution, the surety giving the notice shall be discharged from all liability thereon.

Ariz.Rev.Stat. § 12–1641.

**7.** "The undersigned hereby grants to SBA full power, in its uncontrolled discretion and without notice to the undersigned * * * to deal in any manner with the Liabilities and the collateral, including * * * the following powers:

"(a) To modify or otherwise change any terms of all or any part of the Liabilities * * *, to grant any * * * indulgence with respect thereto * * *;

"(b) To enter into any agreement of forbearance with respect to all or any part of the Liabilities * * *;

* * * * * *

"(e) In the event of the non-payment when due * * * of any of the Liabilities * * * to realize on the collateral, or any part thereof * * * by foreclosure or otherwise, or to forbear from realizing thereon, all as SBA in its uncontrolled discretion may deem proper * * *.

"The obligations of the undersigned hereunder shall not be released, discharged or in any way affected, nor shall the undersigned have any rights or recourse against SBA by reason of any action SBA may take or omit to take under the foregoing powers."

386 F.2d at 149–50.

**8.** We also feel that a remand is advisable in order to have a decision on Arizona law by a district judge sitting in that state. It is an established principle in diversity cases that a district judge's determinations on the law of the state in which he sits are to be given great weight. *See, e. g., C. R. Fedrick, Inc. v. Borg-Warner Corp.,* 552 F.2d 852, 856 (9th Cir. 1977); *Smith v. Sturm, Ruger & Co.,* 524 F.2d 776, 778 (9th Cir. 1975).

**9.** We are bound to affirm despite the fact that the district court's denial of this defense was

ment is reversed and remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

based on an improper choice of law rather than on the contractual waiver. It is well-established that if any ground exists which would support a judgment, we must affirm. *SEC v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937); *United States v. Best,* 573 F.2d at 1100.