Clarence W. DUPNIK, Sheriff of Pima County, Plaintiff,

v.

UNITED STATES of America, et al., Defendants,

UNITED STATES of America; Small Business Administration, Cross-Claimant/Appellee,

v.

CENTURAS INVESTMENT COMPANY, INC., an Arizona corporation, Cross-Claim Defendant/Appellant,

CENTURAS INVESTMENT COMPANY, INC., an Arizona corporation, Cross-Claimant/Appellant,

v.

UNITED STATES of America; Small Business Administration, Cross-Claim Defendant/Appellee.

No. 87-1774.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 11, 1988.*

Decided June 3, 1988.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a).

Patrick J. Farrell, Corey & Farrell, P.C., Tucson, Ariz., for cross-claim defendant/appellant.

James D. Whitney, Asst. U.S. Atty., Tucson, Ariz., for cross-claimant/appellee.

Before NOONAN and DAVID R. THOMPSON, Circuit Judges, and KELLEHER, District Judge.**

DAVID R. THOMPSON, Circuit Judge:

This case presents the issue whether the United States Small Business Administration ("SBA") must comply with an Arizona statute that requires lien creditors who wish to redeem property sold at foreclosure to file a notice of intent to redeem within six months of the foreclosure sale. *See* Ariz.Rev.Stat.Ann. § 12–1284 (1982).[1] It is undisputed that the applicable federal statute, 28 U.S.C. § 2410, gives the government a right to redeem within one year of a foreclosure sale. Arizona law, however, voids redemption rights which are not preserved by a notice of intent to redeem given within six months of a foreclosure sale. *See S & M Trust Co. v. Valley Lumber Co.*, 5 Ariz.App. 373, 375, 427 P.2d 354, 356 (1967). In the present case, real property on which the SBA held a junior lien was sold at a foreclosure sale which did not bring enough money to satisfy the SBA lien. The SBA believed that the property was worth more than the foreclosure sale proceeds. It gave notice of intent to redeem and tendered the redemption amount. The notice was given, and the

---

** Honorable Robert J. Kelleher, United States District Judge, Central District of California, sitting by designation.

1. Arizona law requires a redeeming creditor to attach certain documents to the notice of intent to redeem called for by section 12–1284. *See* Ariz.Rev.Stat.Ann. § 12–1287 (1982); *Matcha v. Wachs*, 132 Ariz. 378, 380, 646 P.2d 263, 265 (1982). We refer to these two statutes collectively as the Arizona notice requirement.

tender was made, more than eleven months, but less than one year, after the foreclosure sale.

The district court concluded that the SBA's tendered redemption was timely under federal law, and notwithstanding the SBA's failure to comply with the Arizona notice requirement, its lien was not extinguished and it was entitled to redeem the property. For the reasons expressed below, we reverse.

## I

### FACTS

In September 1976, Conduct–O–Tape Electronics Corporation borrowed $125,000 from Banco Internacional de Arizona ("the Bank"). David Kali, president and sole shareholder of Conduct–O–Tape, and his wife Janis guaranteed the loan and secured the guaranty by giving the Bank a second deed of trust on their home in Tucson. The SBA guaranteed repayment of ninety percent of the loan. By April 1978, Conduct–O–Tape was in default. Honoring its guaranty, the SBA bought the loan from the Bank, and acquired the Bank's second trust deed on the Kalis' home. The assignment was recorded.

Home Federal Savings & Loan Association ("Home Federal") held the first deed of trust on the Kalis' home. The Kalis defaulted on their obligation to Home Federal, and on June 21, 1985, Home Federal obtained a partial judgment and decree of foreclosure against the Kalis and the junior lienholders. This judgment stated that the SBA had the next highest lien, that the Kalis had six months to redeem their property, and that the SBA "shall have a redemption period of one year as provided by law." The redemption periods were to begin the day after the special execution sale of the property.

On September 5, 1985, the property was sold by the Pima County Sheriff at the special execution sale.[2] On March 4, 1986, appellant Centuras Investment Company ("Centuras") became the owner of the interest in the property acquired by the purchaser at the execution sale. On August 13, 1986, the SBA filed a notice of intent to redeem and tendered the redemption amount to the sheriff.

## II

### ANALYSIS

Federal law is the source of the SBA's right to redeem the property at issue in this case. *See* 28 U.S.C. § 2410; *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727–28, 99 S.Ct. 1448, 1457–58, 59 L.Ed.2d 711 (1979); *United States v. Mac-Kenzie*, 510 F.2d 39, 40–41 (9th Cir.1975) (en banc). The relevant portions of section 2410 are set out in the margin.[3] Section 2410 establishes the SBA's right to redeem within one year. The statute does not qualify the government's one-year right of redemption, but it also does not offer any

---

**2.** A special execution sale is a form of foreclosure sale conducted by the sheriff. Below, we use the general term "foreclosure sale" to refer to this particular type of sale as well as other types of foreclosure sales that constitute a "judicial sale" within the meaning of 28 U.S.C. § 2410(c).

**3.** § 2410. *Actions affecting property on which United States has lien*

(a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

. . . .

(2) to foreclose a mortgage or other lien upon,

. . . .

(5) of interpleader or in the nature of interpleader with respect to, real or personal property on which the United States has or claims a mortgage or other lien.

. . . .

(c) A judgment or decree in such action or suit shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court is situated. However, an action to foreclose a mortgage or other lien, naming the United States as a party under this section, must seek judicial sale. . . . Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem. . . .

detail regarding how the SBA might exercise this right.

Our analysis of whether section 2410 and the Arizona notice requirement should both apply in this case follows a two-step process. First, we must determine whether section 2410 demonstrates a clear congressional intent to override the Arizona notice requirement. *See United States v. John Hancock Mut. Life Ins. Co.,* 364 U.S. 301, 304–05, 81 S.Ct. 1, 3–4, 5 L.Ed.2d 1 (1960). If Congress clearly expressed such an intent, our inquiry is over and the state statute must fall because federal law is supreme. *See* U.S. Const. art. VI, cl. 2. If we conclude that the federal statute does not clearly indicate an intent to preempt the state notice requirement, then we must formulate an appropriate federal rule, either by adopting the state law as the governing federal law or by formulating a uniform federal rule to apply throughout the nation. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728–29, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979).

### A. *Congressional Intent to Preempt*

[1] The SBA's position is that federal and state law directly conflict in this case and that the SBA, therefore, appropriately was permitted to redeem. The SBA argues that section 2410 gives it the unconditional right to redeem within one year and that Arizona's six-month notice requirement is preempted by the statute's clearly unconditional language: "The United States *shall* have one year from the date of sale within which to redeem." 28 U.S.C. § 2410(c) (emphasis added). As did the district court, the SBA relies on *United States v. Brosnan,* 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960), and *United States v. John Hancock Mut. Life Ins. Co.,* 364 U.S. 301, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960).

In *Brosnan,* the Court stated: "Under § 2410, a judicial sale is to have the same effect as it would have under local law.... [T]he Government is guaranteed a one-year right to redeem if the plaintiff proceeds under § 2410...." *Brosnan,* 363 U.S. at 246, 80 S.Ct. at 1114. The Court held that private parties holding defaulted mortgages on property could satisfy those mortgages by using state procedures to extinguish more junior federal tax liens, even though the United States was not included as a party. *See id.* at 242, 80 S.Ct. at 1111. *Brosnan* favored the local interests represented by state law, but the Court emphasized that its conclusion "would not, of course, withstand a congressional direction to the contrary." *Id.*

In *Brosnan,* the Court found no congressional direction regarding the applicability of local laws. The Court rejected the government's argument that section 2410 evidenced a congressional intent to have uniform federal rules govern federal liens. It stated that section 2410 "evidence[s] no intent to exclude otherwise available state procedures. [Its] only apparent purpose is to lift the bar of sovereign immunity which had theretofore been considered to work a particular injustice to private lienors." *Id.* at 246, 80 S.Ct. at 1114. *Brosnan,* therefore, does not support the SBA's argument that Congress intended section 2410 to establish a right of redemption that could be pursued with disregard for state law procedures.

In *United States v. John Hancock Mut. Life Ins. Co.,* 364 U.S. 301, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960), the Court held that section 2410 preempted a Kansas statute that gave the mortgagor an exclusive right of redemption within one year of the foreclosure sale. *Id.* at 304–09, 81 S.Ct. at 3–6 (1960). Kansas law and section 2410 could not coexist. The Kansas statute's exclusivity provision could not be reconciled with the government right established in section 2410.

Arizona law gives a lien creditor in the position of the SBA five days in which to redeem foreclosed property, following the expiration of the time for redemption by the judgment debtor. *See* Ariz.Rev.Stat. Ann. § 12–1282(C) (1982). Under *John Hancock,* this five-day period of redemption conflicts with the government's one-year right of redemption under 28 U.S.C. § 2410(c). If this were the conflict at issue in this case, *John Hancock* would control. In the present case, however, the govern-

ment's one-year period of redemption does not conflict with Arizona's requirement that notice of intent to redeem must be given within six months of a foreclosure sale. Therefore, *John Hancock* does not mandate the preemption result the SBA suggests.

Three substantial factors indicate that the language of section 2410 does not reveal a congressional intent to preempt state notice requirements. First, Congress failed to include any notice provisions in section 2410. Ordinarily, a complete system of redemption would contain some protection, such as a notice system, for the rights of other lien creditors. It is a fair implication that Congress's silence indicates its consent to state notice requirements, which establish a procedure that can integrate rights created under state and federal law. *See United States v. Standard Oil Co.*, 332 U.S. 301, 309, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947).

Second, a finding of federal preemption is disfavored: "Preemption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the related subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.'" *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963)). Evidence of a congressional intent to preempt state law should be even clearer when the state law concerns a subject that "is peculiarly adapted to local regulation." *Hines v. Davidowitz*, 312 U.S. 52, 68 n. 22, 61 S.Ct. 399, 405 n. 22, 85 L.Ed. 581 (1941); *see DeCanas v. Bica*, 424 U.S. 351, 362–63, 96 S.Ct. 933, 939–40, 47 L.Ed.2d 43 (1976); *Pacific Legal Found. v. State Energy Resources Conservation & Dev. Comm'n*, 659 F.2d 903, 919 (9th Cir.1981) ("the presumption operates in favor of the validity of the state law; courts are not to seek out conflicts between state and federal regulation where none clearly exist."), *aff'd sub nom., Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 220–23, 103 S.Ct. 1713, 1730–32, 75 L.Ed.2d 752 (1983).

Although state law should be preempted if it "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress," *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984) (citing *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)), in the case now before us it is well within the SBA's capacity to comply with Arizona's notice requirement. As we have stated previously, "[i]t must be assumed that the Small Business Administration maintains competent personnel familiar with the laws of the various states in which it conducts business, and who are advised of the steps required by local law in order to acquire a valid security interest within the various states." *Bumb v. United States*, 276 F.2d 729 (9th Cir.1960) (quoted with approval in *United States v. Yazell*, 382 U.S. 341, 347 n. 13, 86 S.Ct. 500, 504 n. 13, 15 L.Ed.2d 404 (1966)). Moreover, even the SBA's own regulations encourage the use of local procedures for notification purposes. *See* 13 C.F.R. § 101.1(d)(3) (1987) ("In order to implement and facilitate these Federal loan programs, the application of local procedures, especially for recordation and notification purposes, may be utilized to the fullest extent feasible and practicable."). Thus, the Arizona notice requirement does not establish an "impediment" or "obstacle" to the accomplishment of federal redemption objectives sufficient to overcome the disfavor that we have for finding a state law preempted.

Third, we are guided by the Court's decision in *Brosnan*, which did not preempt state law in circumstances that, under the analysis of *Standard Oil*, 332 U.S. at 309, 67 S.Ct. at 1609, presented an even stronger case for preemption than the present one. In *Brosnan*, the Court upheld state procedures that extinguished federal tax liens even though the government did not participate in or know about the state pro-

cedures.[4] *Brosnan,* 363 U.S. at 238–39, 241–42, 80 S.Ct. at 1110, 1111. Moreover, the federal statute at issue in *Brosnan* contained greater evidence of a congressional intent to preempt state law than in the present case, but the state law procedures were not preempted. Rather, they were adopted as federal law. *See Brosnan,* 363 U.S. at 240–42, 80 S.Ct. at 1110–11.

We conclude that Congress did not intend section 2410 to preempt a state notice requirement such as that contained in Ariz. Rev.Stat.Ann. §§ 12–1284 and 12–1287 (1982).

## B. *State Versus Federal Interests*

Having determined that Congress did not intend section 2410 to preempt Arizona's notice requirement, we now proceed to the second stage of our analysis: Should the Arizona notice provision be adopted as the governing federal law? "In the absence of an applicable act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards." *Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943).

In deciding whether state law should be adopted as the governing federal common law, "our cases have primarily focused on the issue of competing federal and state concerns." *United States v. Pastos,* 781 F.2d 747, 750 (9th Cir.1986). Consistent with its actions in the preemption area, the

Supreme Court has encouraged the adoption of state law as the federal law applicable within that state. "[State interests] should be overridden by the federal courts only where clear and substantial interests of the National Government, which cannot be served consistently with respect for such state interests, will suffer major damage if the state law is applied." *United States v. Yazell,* 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966); *see United States v. MacKenzie,* 510 F.2d 39, 40 (9th Cir.1975) (en banc). The federal courts will formulate a federal law that supersedes state law only when it relates to federal programs and actions where "[t]he desirability of a uniform rule is plain." *Clearfield,* 318 U.S. at 367, 63 S.Ct. at 575; *see Yazell,* 382 U.S. at 354, 86 S.Ct. at 507.

Before we discuss the state and federal interests at stake, it is necessary to describe how the Arizona statutes at issue apply in this case.

### 1. *Arizona's Redemption Scheme*

The Arizona law of redemption relevant to this appeal is quoted in the margin. The SBA is a "subsequent lienholder" under Arizona law because its lien is junior, or subsequent, to Home Federal's. *See* Ariz. Rev.Stat.Ann. § 12–1281 (1982). Section 12–1284 requires a subsequent lienholder to file a notice of intent to redeem "within the applicable period of redemption as provided in § 12–1282." [5] When the property

---

**4.** Shortly after the *Brosnan* decision was announced, Congress amended section 2410 to require a judicial sale so that the government would be notified about the foreclosure. *See* Pub.L. No. 89–719, § 109, 80 Stat. 1125, 1141 (1966); *United States v. Capobianco,* 836 F.2d 808, 814–15 (3d Cir.1988).

**5.** § 12–1282. *Time for redemption*

A. The judgment debtor or his successors in interest may redeem at any time within thirty days after the date of the sale if the court determined as part of the judgment under which the sale was made that the property was both abandoned and not used primarily for agricultural or grazing purposes.

B. The judgment debtor or his successor in interest may redeem at any time within six months after the date of the sale except when the court has made the determinations as provided in subsection A.

C. If the redemption as provided in subsection A or B is not made, the senior creditor having a lien, legal or equitable, upon the premises sold, or any part thereof, subsequent to the judgment under which the sale was made, may redeem within five days after expiration of the applicable period provided in subsection A or B, and each subsequent creditor having a lien in succession, according to priority of liens, within five days after the time allowed for prior lienholder, respectively, may redeem by paying the amount for which the property was sold and all liens prior to his own held by the person from whom redemption is made, together with the eight per cent added to the amount as provided in § 12–1285.

§ 12–1284. *Notice of redemption by subsequent lienholder*

To entitle a subsequent lienholder to redeem he shall, within the applicable period of redemption as provided in § 12–1282, file with the

has not been abandoned, and thus section 12–1282(A) does not apply, the applicable period of redemption referred to in section 12–1284 is the six-month period established by section 12–1282(B). *See Matcha v. Wachs,* 132 Ariz. 378, 380, 646 P.2d 263, 265 (1982).

The Arizona Court of Appeals has explained the relationship between the notice provisions in sections 12–1282 and 12–1284 as follows:

> Th[e] right to redeem [provided in section 12–1282] is not established until the lienholder files the "Notice Of Intention To Redeem" required by Section 12–1284. If this is not done, the lienholder loses his right to redeem and the rights of any subsequent lienholder, who has given notice, become senior to his. This is the meaning of the term "senior creditor" in § 12–1282. The "senior creditor" refers to the creditor whose lien is highest in the order of those who have complied with section 12–1284.

*S & M Trust Co. v. Valley Lumber Co.,* 5 Ariz.App. 373, 375–76, 427 P.2d 354, 356–57 (1967).

The judgment and decree of foreclosure identified the SBA as the second lienholder, junior only to Home Federal. Arizona law would permit the SBA to redeem only if it filed the notice and supporting documents required by sections 12–1284 and 12–1287. This requirement could have been met by filing the necessary notice any time within six months after the foreclosure sale. If the SBA were not protected by section 2410, it would have been able to redeem the property only for a five-day period after March 5, 1986. Section 2410 clearly alters the five-day redemption period. This is not disputed. If none of the creditors filed a notice of intent to redeem under section 12–1284, according to Arizona law the sher-

iff should have executed and delivered a deed to the property to Centuras on March 6, 1986. *See* Ariz.Rev.Stat.Ann. § 12–1286;[6] *S & M Trust Co.,* 5 Ariz.App. at 376, 427 P.2d at 357.

### 2. *Arizona's Interests*

Arizona's requirement that a redemptioner file a timely notice of his intent to redeem establishes a mechanism to clear title to property sold at foreclosure in a reasonably prompt manner and provides an orderly procedure that protects the interests of lien creditors. *See S & M Trust Co.,* 5 Ariz.App. at 376, 427 P.2d at 357. The person who receives a sheriff's deed at a foreclosure sale certainly would be inconvenienced by a lingering cloud on the title if the United States were not required to file a notice of intent to redeem. *Id.* Were we to adopt the rule advocated by the SBA we would disrupt settled Arizona redemption procedures, with unpredictable results. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 739–40, 99 S.Ct. 1448, 1464, 59 L.Ed.2d 711 (1979) ("Because the ultimate consequences of altering settled commercial practices are so difficult to foresee, we hesitate to create new uncertainties, in the absence of careful legislative deliberation." (footnote omitted)). Under Arizona law, only creditors who file a proper notice of intent to redeem are included in the succession of five-day redemption periods mentioned in section 12–1282(C). *See S & M Trust Co.,* 5 Ariz.App. at 375–76, 427 P.2d at 356–57. To calculate when their right to redeem arises, Arizona creditors considering redemption would naturally examine the public record to determine who has filed a notice of intent to redeem. Arizona's notice provision protects the redemption rights of all lien creditors. Without the notice provision, the rights of Arizona

county recorder of the county in which the sale is made a notice in writing stating that he intends to redeem and specifying his lien and the amount thereof and its order of priority, and shall deliver a copy thereof to the sheriff of the county.
Ariz.Rev.Stat.Ann. (1982).

**6.** § 12–1286. *Execution and delivery of deed by sheriff*

At the expiration of all the applicable periods of redemption as provided in § 12–1282, and not sooner, the sheriff shall execute and deliver a deed to the property sold to the purchaser at the sale, or in case redemption is made by a redemptioner, then to the last redemptioner redeeming the property.

creditors would be substantially less certain.

### 3. *Federal Interests*

The SBA argues that the federal interest to be considered is the United States' right to redeem. This position, however, assumes that the SBA is incapable of complying with the notice provision. We cannot accept that assumption. As we noted in part A above, we assume that the SBA can comply with state laws to protect its security interests; indeed, its own regulations encourage using local notice procedures. *See* 13 C.F.R. § 101.1(d)(3) (1987). Although compliance with the Arizona provision might add a modest expense to the administration of SBA loans in that state, we have adopted state law "despite added costs to loan programs" when other federal interests were not jeopardized. *United States v. Ellis,* 714 F.2d 953, 955 (9th Cir. 1983).

In reviewing the legislative history of section 2410, the Supreme Court has stated that "Congress considered the redemption provision of § 2410(c) an important and integral feature of § 2410." *United States v. John Hancock Mut. Life Ins. Co.,* 364 U.S. 301, 305, 81 S.Ct. 1, 4, 5 L.Ed.2d 1 (1960). The importance of this redemption provision relates to the government's procurement procedures. As a junior lienholder, the SBA can bid competitively at a foreclosure sale to ensure that property on which it has a lien is not sold at a discount, to the detriment of the SBA's lien interest. Such a bid, however, normally requires an allocation of funds, and this may entail an appreciable time for processing. *See, e.g., id.* at 306, 81 S.Ct. at 4 (appropriation from Congress may be required for bid at foreclosure sale). Thus, "the one-year period of redemption was inserted to afford the United States sufficient time to secure an appropriation and protect its interests." *Id.* But a requirement that the SBA comply with Arizona's notice provision does not

impact the SBA's ability to procure funds necessary for redemption.

### 4. *Analysis*

■ If Arizona's notice of intent to redeem requirement is adopted as federal law, the SBA will lose its right to redeem in this case. Compliance with this notice requirement, however, will not unduly burden the SBA. The federal interest at stake here is convenience in being freed from the shackle of a state notice procedure. Our previous decisions indicate that convenience normally is not sufficient justification to create a uniform federal rule rather than to adopt state law. *See Ellis,* 714 F.2d at 955.[7] Moreover, we previously have adopted state procedures as federal law even though the SBA's failure to comply with those procedures can extinguish its rights. In *Bumb v. United States,* 276 F.2d 729 (9th Cir.1960), we adopted as federal law a state law recording requirement. The state law requirement extinguished a chattel mortgage held by the SBA. We concluded in *Bumb* that the SBA had failed to create a valid security interest under California law. *Id.* The California law in question only regulated "the manner of acquisition of a valid security interest, and [it did] not purport to regulate the remedy of the [SBA] after default by the mortgagor." *Id.* at 737.

Although the SBA does not mention our *Bumb* decision, it argues that our refusal to adopt local rules as federal law in two of our previous opinions should be followed in this case. *See United States v. Stadium Apartments, Inc.,* 425 F.2d 358, 360–61 (9th Cir.), *cert. denied,* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970); *United States v. View Crest Garden Apts., Inc.,* 268 F.2d 380, 383 (9th Cir.), *cert. denied,* 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959). We rejected this same argument in *United States v. Pastos,* 781 F.2d 747, 750 (9th Cir.1986), and we do so again today for

---

7. In *Ellis,* we stated: "The fact that increased costs may result from the adoption of state law regarding debtor and creditor rights is not controlling." 714 F.2d at 955. Thus, as we do today, we considered increased costs relevant and we left open the possibility that another case may present the federal government with such significant costs that that factor alone would justify adopting a uniform federal rule.

the same reason: the state interests in favor of adopting state law outweigh the opposing federal interests.

 We conclude that *Bumb* controls our decision and that state law should be adopted. The Supreme Court's decision in *United States v. Brosnan*, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960), strengthens this conclusion. Indeed, *Brosnan* emphasized the need for judicially created federal common law to respect the "complex property relationships long since settled and regulated by state law." *Id.* at 242, 80 S.Ct. at 1111. The Court concluded that the best way to respect "the tenets of our federal system" was "not to inject [the courts] into the network of competing private property interests, by displacing well-established state procedures governing their enforcement, or superimposing on them a new federal rule." *Id.* In our case, Arizona lienholders should be able to rely on Arizona's notice of intent to redeem requirement even when redemption might be exercised by the federal government under 28 U.S.C. § 2410. Asking the SBA to comply with this notice provision will create little inconvenience and is consistent with the precedents of the Supreme Court and this court. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728–40, 99 S.Ct. 1448, 1458–65, 59 L.Ed.2d 711 (1979); *United States v. Yazell*, 382 U.S. 341, 348–52, 86 S.Ct. 500, 504–06, 15 L.Ed.2d 404 (1966); *Brosnan*, 363 U.S. at 240–42, 80 S.Ct. at 1110–11; *Pastos*, 781 F.2d at 751–52; *United States v. Crain*, 589 F.2d 996, 1000 (9th Cir.1979); *United States v. MacKenzie*, 510 F.2d 39, 40 (9th Cir.1975) (en banc); *Bumb*, 276 F.2d at 735–38.

The SBA contends that we should not adopt the Arizona notice requirement because doing so would undercut one of the conditions that Congress attached to the waiver of sovereign immunity contained in section 2410. In *United States v. John Hancock Mut. Life Ins. Co.*, 364 U.S. 301, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960), the Supreme Court categorized the one-year right to redeem established in section 2410 as a condition that Congress imposed on its waiver of sovereign immunity. *Id.* at 306, 81 S.Ct. at

4. The Court then noted that "protective conditions" that accompany the waiver of sovereign immunity "must be strictly observed and exceptions thereto are not to be implied." *Id.* (quoting *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957)).

As discussed above, the Court in *John Hancock* held that section 2410's redemption period preempted the redemption period available under state law. The Court reviewed a Kansas decision holding that state law barred the United States from redeeming during the first year after the foreclosure sale. *Id.*, 364 U.S. at 304, 81 S.Ct. 3. In defense of the result reached by the Kansas courts, John Hancock argued that Congress actually intended section 2410's redemption period to apply only when state law provided *no* right of redemption. *See id.* at 306–07, 81 S.Ct. at 4–5. The Court disagreed, concluding instead that Congress wanted the government to have a one-year right to redeem no matter what the substantive provisions of state law established.

 The circumstances in the present case are quite different from those in *John Hancock*. Here, the Arizona procedures provide for notice to the owner of property and to lienholders. No comparable procedures have been created by Congress. The parties' dispute in *John Hancock* focused on the United States' substantive right to redeem and the debtor's exclusive right to redeem under state law. The Court did not consider, nor did the dispute involve, state notice requirements to protect the rights and interests of the owner of property and lienholders. Given this significant distinction, we follow what we consider the stronger principle which is present in the case now before us: State law procedures governing property relationships should be adopted as federal law when Congress creates a property right but is silent regarding how that right should be integrated into coexisting rights arising under state law, so long as the state procedures are convenient and adequately protect federal interests. This principle is drawn from *United States v. Kimbell Foods, Inc.*, 440 U.S.

715, 739–40, 99 S.Ct. 1448, 1464, 59 L.Ed.2d 711 (1979) and *United States v. Standard Oil Co.*, 332 U.S. 301, 309, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947).

The SBA also argues that even if the Arizona notice provision applies, as we have decided it does, equitable principles expressed in Arizona law should permit SBA to redeem. *See Matcha v. Wachs*, 132 Ariz. 378, 380–82, 646 P.2d 263, 265–67 (1982). This claim is without merit. The SBA's notice was filed more than five months late under Arizona law. Such substantial tardiness cannot be excused as only a "minor deviation" from Arizona's statutory scheme. *See Matcha*, 132 Ariz. at 380–82, 646 P.2d at 265–67. In *Matcha*, the Arizona Supreme Court held that a party in "substantial compliance" with the Arizona redemption requirements did not lose his right to redeem. The court explained that the lienholder's timely section 12–1284 notice and the filing of documents required by section 12–1287 concurrently with his tender of the money necessary for redemption constituted substantial compliance. *Id.* at 381–82, 646 P.2d at 266–67. Concluding that none of the parties was prejudiced by the lienholder's "minor deviation" from full compliance, the court accepted his tendered redemption. *Id.* at 382, 646 P.2d at 267.

The SBA's notice and tender of redemption in this case differ significantly from the facts in *Matcha*. The court's willingness to find substantial compliance in *Matcha* was based in large part on the appellant's timely filing of notice under section 12–1284. *Id.* at 381–82, 646 P.2d at 266–67. The deviation from section 12–1287 was only two days. *Id.* Here it exceeds five months. Unlike the lienholder in *Matcha*, the SBA also had the benefit of the Arizona Supreme Court's very clear delineation of the notice requirements.[8] The SBA's claim that noncompliance with Arizona law might be excused as inadvertent or in good faith is irrelevant. Since the SBA did not substantially comply with the stat-

utes, the presence or absence of prejudice, which is the second step in the *Matcha* inquiry, need not be explored.

## III

## CONCLUSION

Congress has expressed no clear intention that 28 U.S.C. § 2410 preempt a state "notice of intent to redeem" requirement such as that contained in Ariz.Rev.Stat. Ann. §§ 12–1284 and 12–1287 (1982). The Arizona state law interests outweigh the federal interests in this case. Thus, we adopt the notice requirement of Ariz.Rev. Stat.Ann. §§ 12–1284 and 12–1287 (1982) as the applicable federal common law. The SBA did not comply with this notice requirement. Its tender of redemption, therefore, was ineffective, and Centuras is entitled to a deed to the property free from the SBA's claimed right to redeem.

REVERSED AND REMANDED for proceedings consistent with this opinion.

---

8. The *Matcha* opinion clearly explains the Arizona notice requirements. The SBA's argument that section 12–1284 is susceptible to more than one interpretation or is "void for vagueness" is rebutted by *Matcha*, 132 Ariz. at 380, 646 P.2d at 265, and *S & M Trust Co. v. Valley Lumber Co.*, 5 Ariz.App. 373, 374–76, 427 P.2d 354, 355–57 (1967).