TITLE INSURANCE COMPANY OF MINNESOTA, Plaintiff–Appellee,

v.

INTERNAL REVENUE SERVICE OF the UNITED STATES, Defendant–Appellant,

Gerald Swanson, Defendant.

No. 91–1063.

United States Court of Appeals, Tenth Circuit.

April 28, 1992.

---

John N. Dahle of Grant McHendrie, P.C. (Walter J. Downing of Grant McHendrie, with him on the brief), Denver, Colo., for plaintiff-appellee.

Kent L. Jones (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, William S. Estabrook, and Robert L. Baker, Attys., Tax Div., Dept. of Justice, of counsel: Michael J. Norton, U.S. Atty., with him on the brief), Washington, D.C., for defendant-appellant.

Before BRORBY and McWILLIAMS, Circuit Judges, and ALLEY, District Judge.*

McWILLIAMS, Circuit Judge.

This case concerns the validity of a certificate of redemption executed by the Internal Revenue Service (IRS) in connection with a state foreclosure of real property located in Adams County, Colorado. The district court held that the certificate of redemption was invalid under both federal and state law.

The case was presented to the district court on stipulated facts. From the stipulation we learn that Lynn Stanley Olsen and Judith Karen Olsen were the legal owners of certain real property located in Adams County, Colorado. The property was subject to a recorded deed of trust in favor of Security Industrial Bank (Security) and was also subject to junior federal tax liens recorded by the IRS. On April 26, 1989, Security, after giving the government notice as required by 26 U.S.C. § 7425(c), caused the subject property to be sold by the public trustee with the proceeds of the sale to be applied on the Olsens' indebtedness to Security. At the sale on April 26, 1989, the public trustee sold an undivided one-half interest to Golden Frontier Industries, Inc., and an undivided one-half interest to Neal and Judy Goldsmith for a total purchase price of $7,711.57. On July 17, 1989, Neal Goldsmith redeemed the subject property from the other purchasers.

From the stipulation we further learn that on July 10, 1989, one Dan Savage obtained from the Olsens a deed of trust on the subject property to secure a $750 note, and that Savage recorded his deed of trust on that same date. On July 26, 1989, Dan Savage redeemed the subject property from Neal Goldsmith for $20,972.96, and a public trustee's deed to that effect was recorded on July 27, 1989.

On August 11, 1989, one Virginia Muwwakkil, an employee of the IRS, tele-

* Honorable Wayne E. Alley, United States District Judge for the Western District of Oklahoma, sitting by designation.

phoned Savage and advised him that the IRS intended to redeem the subject property from the foreclosure sale and inquired about the amount of money Savage had spent in redeeming and repairing the subject property. Savage did not at any time provide the IRS with the requested information.

On or about August 23, 1989, Ms. Muwwakkil again telephoned Savage and the two agreed to meet in the offices of Title Insurance Company of Minnesota (Title Insurance) at 2:00 p.m. on August 24, 1989. In that telephone conversation, Ms. Muwwakkil told Savage that she intended to deliver him a check at that meeting for the amount of money he had spent redeeming and repairing the subject property. Ms. Muwwakkil and a fellow IRS employee appeared at the agreed time and place on August 24, 1989, but Savage did not.

On August 24, 1989, the 120th day after the April 26, 1989, foreclosure sale, the IRS filed a certificate of redemption on the subject property with the Adams County Clerk and Recorder. The validity of this certificate of redemption is the issue in the present case. That certificate of redemption stated that the IRS had tendered payment of $33,645.46 to Savage by a check dated August 23, 1989, a copy of which was attached to the certificate.

On August 30, 1989, the IRS notified Savage of its intention to foreclose upon the subject property. On September 6, 1989, Savage made a written demand on the IRS to issue a revocation of its certificate of redemption. On September 22, 1989, Savage brought the present action against the IRS and Gerald Swanson, the District Director for the IRS. On September 25, 1989, Savage conveyed his interest in the subject property to Title Insurance, which had insured his title on the property. Title Insurance was thereafter substituted for Savage as plaintiff in the action. By amended complaint the United States was added as a party defendant. By the amended complaint Title Insurance sought an adjudication and declaration that it was the owner of the subject property in fee simple and that neither the United States

nor any of its agencies had any right, title, or interest in the property, and Title Insurance also asked that the United States be permanently enjoined from asserting any claim of any type in or to the property.

Based on these stipulated facts, both Title Insurance and the United States moved for summary judgment. The district court denied the IRS motion, but granted Title Insurance's motion, the district court believing, as previously indicated, that the IRS's certificate of redemption filed on August 24, 1989, did not comport with applicable federal and state statutes, as well as certain federal regulations. In accordance therewith, the district court entered judgment "finding that the IRS may not assert any right, title, claim or other interest in the subject property of the Plaintiff."

As stated, the IRS filed its certificate of redemption on August 24, 1989, the 120th day after the April 26, 1989, foreclosure sale, and in this connection the IRS asserts that it is granted that period of time to redeem under 26 U.S.C. § 7425(d), which reads as follows:

> (1) *Right to redeem.*—In the case of a sale of real property to which subsection (b) applies to satisfy a lien prior to that of the United States, *the Secretary may redeem such property within the period of 120 days from the date of such sale or the period allowable for redemption under local law, whichever is longer* (emphasis added).

Title Insurance's position, as we understand it, is that although, by virtue of 26 U.S.C. § 7425(d), the IRS had 120 days from the date of the foreclosure sale to file its certificate of redemption, under Colorado law it was required to file a notice of intention to redeem within 75 days from the date of the foreclosure sale, which, it was stipulated, the IRS failed to do. In thus arguing, Title Insurance relies on Colo.Rev.Stat. 38–39–102 & 103 (1973), which read as follows:

> **38–39–102. Redemption within specified period—procedure.** (1) Except as provided in this section with respect to agricultural real estate, *within seventy-five days after the date of the sale of*

*real estate by virtue of any foreclosure of a mortgage, trust deed, or other lien or by virtue of an execution and levy, the owner of the premises or any person who might be liable upon a deficiency may redeem the premises* sold by paying to the public trustee, sheriff, or other proper officer the sum for which the property was sold, with interest from the date of sale at the default rate if specified in the original instrument or if not so specified at the regular rate specified in the original instrument, together with any taxes paid or other proper charges as now provided by law, and a certificate of redemption shall be executed by the proper officer and recorded, and the public trustee, sheriff, or other proper officer shall forthwith pay said money to the holder of the certificate of purchase. If the owner of the premises fails to redeem under this section, any person who might be liable upon a deficiency who redeems under this section shall be issued a certificate of redemption only after the expiration of the proper redemption period (emphasis added).

**38–39–103. Time of redemption by lienor.** (1) If no redemption is made within the redemption period provided for in section 38–39–102, the encumbrancer or lienor having the senior lien, according to the records of the county clerk and recorder's office of the county where the real estate is situate, on the sold premises or some part thereof subsequent to the lien upon which such sale was held may redeem within ten days after the expiration of the above redemption period by paying the amount required by section 38–39–102, and each subsequent encumbrancer and lienor in succession shall have and be allowed a five-day period to redeem, according to the priority of his lien, and may redeem within the five-day period allotted to him by paying all redemption amounts theretofore paid with interest and the amount

of all such liens with interest prior to his own held by such persons as are evidenced in the manner required in this section or, if no encumbrancer or lienor prior to himself has redeemed, by paying the amount required in section 38–39–102.

(2) *No lienor or encumbrancer is entitled to redeem unless, within the redemption period provided for in section 38–39–102, he files a notice of his intention to redeem with the public trustee,* sheriff, or other official making the sale and unless his lien appears by instruments duly recorded or filed as permitted by law (emphasis added).

In granting summary judgment for Title Insurance, the district court recognized that under the Supremacy Clause of the United States Constitution, Article VI, Clause 2, federal law preempts and invalidates state law which interferes with or is contrary to federal law, citing *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) and *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). The district judge then noted that there was no "express preemption" provision in any of the federal statutes or federal regulations with which we are here concerned, and further, in his view, there was no "implied preemption" by federal law arising out of "actual conflict" between federal and state law.[1] *See Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). In this latter connection the district judge then stated that he saw "[n]o conflict which would warrant application of the preemption doctrine to the state statute, C.R.S. § 38–39–102...."

From this reference by the district court to Colo.Rev.Stat. 38–39–102 (1973), the IRS argues, on appeal, that the district court

---

**1.** The district court did not mention a third basis for preemption, i.e., that the scheme of federal regulation is so comprehensive to permit the reasonable inference that Congress "left no room" for supplementary state regulations. *Bishop v. Fed. Intermediate Credit Bank of Wich-* *ita,* 908 F.2d 658, 660 (10th Cir.1990) (citing *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985)). Such, however,, would not, in our view, support a finding of federal preemption in the instant case.

held that there was no actual conflict between the 120 day redemption period contained in 26 U.S.C. § 7425(d) and the 75 day redemption period contained in Colo.Rev. Stat. 38–39–102 (1973), and that the IRS had only 75 days to file a certificate of redemption. However, a fair reading of the district court's entire order on summary judgment indicates, to us, that such was not really its holding, and we agree that it would be error if the district court had in fact held that the 75 day redemption period contained in Colo.Rev.Stat. 38–39–102 (1973) somehow applied to the IRS.

We note that the 75 day redemption provision in Colo.Rev.Stat. 38–39–102 (1973) apparently applies to the "owner" of the foreclosed property, or any person who might be liable for a deficiency, and does not apply to a lienor. But if the district court held that the 75 day provision in Colo.Rev.Stat. 38–39–102 (1973) somehow applied to the IRS, then such would conflict with the 120 day provision in 26 U.S.C. § 7425(d), and the latter would prevail. In this general connection we note that 26 U.S.C. § 7425(d) permits redemption within 120 days from the date of sale, or the period allowable for redemption under local law, "whichever is longer." The "whichever is longer" language indicates to us that when the period allowed by local state law is shorter than 120 days, the United States will still have 120 days to redeem.

Be all that as it may, on appeal, Title Insurance concedes that if this were simply an issue of whether the 75 day period to redeem provided by the Colorado statute, or the 120 day period to redeem provided by a federal statute controls, that under the Supremacy Clause the federal statute would control. We agree. However, as indicated, we do not believe that the district court, in granting Title Insurance summary judgment, held, or intended to hold, that Colo.Rev.Stat. 38–39–102 (1973) was not in actual conflict with 26 U.S.C. § 7425(d). Rather, the district court held that if the IRS had complied with state law, specifically Colo.Rev.Stat. 38–39–103, they would

have then had 120 days to redeem under 26 U.S.C. § 7425(d).

Having found no preemption of state law by federal law, the district court went on to hold that in filing its certificate of redemption, the IRS had not complied with both state law and federal law. Specifically, the district court first held that Colo.Rev.Stat. § 38–39–102 "requires that IRS file a notice of intent to redeem the property within 75 days of the date of sale as required for a junior lienor."[2] Section 103, not 102, does provide, in effect, that if the owner of the foreclosed realty does not redeem, then the lien holders in accord with their seniority are given an additional few days to themselves redeem (but not 120 days), IF they have filed a "notice of intention" to redeem within the redemption period provided for in 38–39–102, i.e., 75 days. The district court apparently concluded that although the IRS may have 120 days under federal law to file its certificate of redemption, under Colo.Rev.Stat. 38–39–103(1) and (2) (1973), it nonetheless had to file within 75 days a "notice of intention" to redeem, and, having failed to so do, its certificate of redemption filed on August 24, 1989 was invalid. The district court reasoned that the Colorado statute was not inconsistent with the 120–day rule of the federal statute, and hence there was no conflict between state and federal statutes. We are not persuaded by such reasoning.

■ Under federal statute, the IRS had 120 days from the date of the public foreclosure sale to file its certificate of redemption, or longer if permitted by state law. 120 days means, to us, 120 days, and a state statute, such as Colo.Rev.Stat. 38–39–103 (1973), requiring IRS to file within 75 days a "notice of intention" to redeem conflicts with, and impinges upon, the 120 days provided by federal statute. Under the Supremacy Clause, the federal statute preempts the state statute. We recognize that our holding is not in accord with *Dupnik v. United States*, 848 F.2d 1476 (9th Cir.1988). In *Dupnik* the Ninth Circuit held that a federal statute giving the Small

---

**2.** The citing of Section 102 we assume was a misstatement. Section 102 makes no reference

to filing a notice of an intent to redeem, but Section 103 does.

Business Administration one year to redeem property sold at a foreclosure sale did not preempt an Arizona statute requiring lien creditors who wished to redeem property sold at foreclosure to file a notice of intent to redeem within six months of the foreclosure sale. We are simply not persuaded by *Dupnik.* Colo.Rev.Stat. 38-39-103(1) and (2) (1973) conflicts with 26 U.S.C. § 7425(d) and hence the latter preempts the former. Such, however, does not dispose of the instant case.

■ The district court also held, *inter alia,* that the certificate of redemption filed by the IRS on August 24, 1989, did not comply with the notice requirements of C.F.R. § 301.7425–4(b)(4)(ii), which reads as follows:

> (ii) Before the expiration of the redemption period applicable under paragraph (a)(2) of this section, *the district director shall, in any case where a redemption is contemplated, send notice to the purchaser (or his successor in interest of record) by certified or registered mail or hand delivery of his right under this subparagraph to request reimbursement* (payable in the event the right to redeem under section 7425(d) is exercised) for a payment made to a senior lienor. No later than 15 days after the notice from the district director is sent, the request for reimbursement shall be mailed or delivered to the office specified in such notice and shall consist of (emphasis added)—
>
> (A) A written itemized statement, signed by the claimant, of the amount claimed with respect to a payment made to a senior lienor, together with the supporting evidence requested in the notice from the district director,....

In a sense, C.F.R. 301.7425–4(b)(4)(ii) is a federal counterpart of Colo.Rev.Stat. 38-39-103 (1973), and under the Supremacy Clause arguably would itself preempt the

state law concerning the filing of a notice of intent to redeem.[3] In any event, the federal regulation requires the District Director of the IRS, where a certificate of redemption is "contemplated," to send before the expiration of the 120-day redemption period a notice to the purchaser, or his successor's interest, by certified or registered mail or by hand delivery of his right to request reimbursement should the IRS later decide to exercise its right to redeem. Under that same regulation, the purchaser, or his successor in interest, is then required to mail within 15 days his request for reimbursement, which shall consist of a written itemized statement of the amount claimed, together with supporting evidence.

In the stipulation of facts, the IRS concedes that it did not comply with C.F.R. § 301.7425–4(b)(4)(ii), but argues that the verbal notice given Savage by Ms. Muwwakkil on August 11, 1989, and August 23, 1989, was sufficient. The district court rejected this argument, and so do we. There was simply no compliance with the mandatory provisions of C.F.R. § 301.-7425–4(b)(4)(ii), which in our view is sufficient to invalidate the certificate of redemption filed by IRS on August 24, 1989.[4]

In support of our resolution of this matter, see *Colorado Property Acquisitions, Inc. v. United States,* 894 F.2d 1173 (10th Cir.1990), where the "shoe was on the other foot," so to speak, i.e., in *Colorado Property* there was not strict compliance with the federal statute by the lending institution which was foreclosing on real property thereby benefiting the IRS. Here the IRS's failure to strictly comply with a federal regulation invalidated its certificate of redemption.

*Colorado Property* involved 26 U.S.C. § 7425(c)(1), which requires that a notice of foreclosure sale be sent to the IRS by registered or certified mail or by personal service by the party foreclosing. In that

---

**3.** A notice that redemption is being "contemplated", as mentioned in C.F.R. § 301.7425–4(b)(4)(ii) is, to us, quite similar to a "notice of ... intention to redeem," referred to in Colo. Rev.Stat. 38-39-103(2) (1973).

**4.** The district court also held that the certificate of redemption filed by the IRS on August 24, 1989, did not comply with 26 C.F.R. § 301.7425–

4(b)(3)(ii) and 26 C.F.R. § 301.7425–4(b)(1)(ii). In view of our conclusion that the IRS did not comply with 26 C.F.R. § 301.7425–4(b)(4)(ii), and that such invalidates its certificate of redemption, we need not here consider the additional grounds relied on by the district court for granting Title Insurance summary judgment.

connection, we held that these provisions regarding the manner of service were mandatory, and that notice by regular mail, even though received by the IRS, would not constitute compliance with the statute. In so holding, we spoke as follows:

> We recognize the harshness of this rule. This rule allows the IRS to receive actual notice, as it did in the instant case, ignore the notice and still retain the right to levy upon the property. The remedy, if any there is to be, must come from Congress and not from the Courts. *Colorado Property* at 1175.

*See also Goodwin v. United States*, 935 F.2d 1061 (9th Cir.1991). In that case a federal statute, 26 U.S.C. § 6335, required that a taxpayer whose property was seized for delinquent payroll taxes be given notice in writing, i.e., personal service, of the seizure, or by leaving said notice at his usual place of abode or business, and in connection therewith the Ninth Circuit held that service by certified mail, even though received by the taxpayer, was defective.

Judgment affirmed.