**Debra BONACCI, Monte Bonacci, and Martha M. Bonacci, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 92–C–833J.**

United States District Court,
D. Utah,
Central Division.

Nov. 10, 1993.

Delano Findley, Salt Lake City, UT, for plaintiffs.

Scott M. Matheson, U.S. Atty., Salt Lake City, UT, Kirk Lusty, U.S. Dept. of Justice, Tax Div., Washington, DC, Mark H. Howard, Dist. Director, Salt Lake City, UT, for defendant.

**ORDER**

JENKINS, District Judge.

■ In this action, Debra S. Bonacci, Monte W. Bonacci, and Martha M. Bonacci (the "Bonaccis") allege that the defendant has wrongfully levied against their property. The government has moved to dismiss for lack of subject matter jurisdiction, raising the bar of the applicable statute of limitations. The Bonaccis allege that certain jewelry belonging to them was seized from a safety deposit box located at what was then Valley Bank in Salt Lake on July 2, 1985. *Memorandum Decision and Order*, No. C86–939G at 3 (D.Utah April 8, 1988) (*Evidentiary Hearing*, Defendants' Exhibit C (Jan. 27, 1993)).[1] The jewelry, initially seized by the Federal Bureau of Investigation, was levied upon by the Internal Revenue Service in an effort to satisfy the tax liabilities of Joseph Bonacci, the person who had been in constructive possession of the safety deposit box.

1. The Court takes judicial notice of the record in *Bonacci v. Jackson*, Civil No. C86–939G.

7. See *Moore v. United States of America,* 950 F.2d 656 (10th Cir.1991).

26 U.S.C. § 7426 permits the non-taxpayer whose property has been wrongfully levied upon to bring civil suit against the United States government. 26 U.S.C. § 6532(c)(1) provides the statute of limitations for claims brought under § 7426:

**(c) Suits by persons other than taxpayers.—**

(1) **General rule.**—Except as provided by paragraph (2), no suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action.

Thus, a non-taxpayer whose property has been wrongfully levied upon must bring suit within nine months of the date on which the notice of seizure is provided.

The nine-month period is calculated from "the date of the levy." 26 U.S.C.A. § 6502 states that "[t]he date on which a levy on property or rights to property is made shall be the date on which the notice of seizure provided in section 6335(a) is given" to the possessor of the personal property. In turn, 26 U.S.C.A. § 6335(a) requires:

As soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property, (or, in the case of personal property, the possessor thereof), or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made. If the owner cannot readily be located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address. Such notice shall specify the sum demanded and shall contain, in the case of personal property, an account of the property seized, and, in the case of real property, a description with reasonable certainty of the property seized.

The Bonaccis filed suit on September 23, 1992, to recover their jewelry. The United States, operating upon the premise that notice under § 6335(a) had been given, filed a motion to dismiss the complaint on October 23, 1992, on the grounds that the court lacks both personal and subject matter jurisdiction over the case. On July 21, 1993, this court denied as premature the Motion to Dismiss as to the question of personal jurisdiction, leaving only the question of subject matter jurisdiction.

■ If sufficient notice was given as the government urges, the "date of levy" for purposes of triggering the statute of limitations was April 30, 1986, and plaintiffs' 1992 civil action for wrongful levy would run afoul of the nine-month limitation period set forth in 26 U.S.C. § 6532(c).[2] If notice was not given there has not yet been a "date of levy" within the meaning of § 6532(c) and the nine-month statutory clock has not yet started to run.

The above-captioned matter came on for an evidentiary hearing before this court on September 16, 1993, at 8:30 a.m.; concerning the issue of service of the notice of seizure. I.R.S. Revenue Officer Ron Jackson ("Mr. Jackson") testified on direct examination concerning service of notice of the seizure:

A    In this circumstance, the notice of levy, the inventory of the items seized was mailed to the Bonacci residence on Leo Way.

Q    And what type of mailing was done to effect that?

A    Certified mail.

Q    Do you recall doing that?

A    I recall doing that, yes.

Q    The second page of Defendant's Exhibit A, is that a copy of the document that was mailed to Mr. Bonacci?

A    Yes. That's the form 668–B. It's the notice of levy.

Transcript of Hearing, September 16, 1993 (hereinafter "Tr."), at 6:8–18. Mr. Jackson reaffirmed this account upon subsequent examination by the court:

THE COURT: Maybe you should just clarify for my benefit. After seizure, tell me what you did in the way of providing notice?

**2.** If notice was given on April 30, 1986, the latest date on which plaintiffs could have filed suit would have been January 31, 1987.

A   The notice, your Honor, was sent to the Leo Way address which was the address of Mr. Bonacci shortly after the seizure was made from the F.B.I. And the reason it was sent there, your Honor, was because that's where Debra Bonacci was getting information. She was, in fact, acting for Mr. Bonacci on several financial matters and other matters. I dealt with Debra on several occasions at the Leo Way address, releasing some personal items from the residence and so forth.

Tr. at 15:13–24. Cross-examination disclosed that at the time that the notice of seizure was mailed to the Bonacci residence, Mr. Jackson was aware that Joseph Bonacci was incarcerated at a federal correctional institution in Texas:

Q   You knew that Mr. Bonacci was in prison at the time?

A   I did.

Q   You mailed the letter to his home address; is that correct?

A   That's correct.

Q   You didn't mail it to him or have it served upon him in prison?

A   No, I did not.

Tr. at 10:21–11:4. Joseph Bonacci testified that he did not recall receiving any of the documents which Mr. Jackson testified had been mailed to the Leo Way residence. Tr. at 26:17–25.

*Goodwin v. United States,* 935 F.2d 1061 (9th Cir.1991), instructs that "the language and purpose of § 6335(a) and § 6335(b) require that the government be held accountable for failure to strictly comply with the procedures prescribed by the two provisions." *Goodwin* explains that "the extraordinary powers granted to the government of levying, seizing and selling property for tax collection purposes without prior judicial hearing are dependent upon strict compliance with the procedures prescribed by statute," *id.* at 1065, following the reasoning of the Second Circuit in *Kulawy v. United States,* 917 F.2d 729, 734 (2d Cir.1990) ("The legitimacy of allowing the government to seize and sell property prior to adjudication, however, has long been recognized to depend on strict compliance by government officials

with the procedures prescribed by law."). As Chief Justice John Marshall, referring to the power of a public officer to seize and sell the property of another, has said: "[T]hat the person invested with such a power must pursue with precision the course prescribed by law, or his act is invalid, is a principle that has been repeatedly recognized by this court." *Thatcher v. Powell,* 19 U.S. (6 Wheat.) 119, 125, 5 L.Ed. 221 (1821). The standard thus imposed by § 6335(a)'s notice requirement is one of literal compliance with its provisions. *See Reece v. Scoggins,* 506 F.2d 967, 971 (5th Cir.1975).

In *Goodwin,* two IRS agents went to Goodwin's residential property and attempted to deliver a notice of levy and seizure. Not finding the taxpayer at his residence, the agents mailed the notices by certified mail. Goodwin then contacted the IRS, promising to pay the taxes in question. Ultimately, the taxes were not paid and the property was sold to the government at public auction. The government conceded that "under a literal reading of § 6335, service by certified mail, as received by Goodwin, is defective," but argued that where there is actual notice of the levy and seizure, prejudice must be shown to justify relief. 935 F.2d at 1064.

Rejecting the government's argument, the Ninth Circuit concluded that the government had not satisfied the notice requirements of § 6335. A literal reading of § 6335 "requires the government to have personally served a written notice to Goodwin or to have left the written notice at Goodwin's usual place of abode." *Id.* at 1064. Certified mail is not personal service. "Moreover," the Ninth Circuit explained, "because § 6335 requires strict compliance, Goodwin did not have the burden of demonstrating prejudice." *Id.* at 1065.

Congress has set forth precise requirements for notice of seizure and sale of property in tax deficiency situations. "[W]hen the government seeks to enforce the laws, it must follow the steps which Congress has specified." *Reece,* 506 F.2d at 971. The government did not give Goodwin the notice required by § 6335. Accordingly, as between Goodwin and the

government, the seizure and sale of the Gladstone property was invalid.

*Id.*

Citing *Goodwin* with apparent approval, the Tenth Circuit in *Title Insurance Co. of Minnesota v. I.R.S.*, 963 F.2d 297 (10th Cir. 1992), adopted a comparable reading of the notice requirement set forth in 26 C.F.R. § 301.7425–4(b)(4)(ii) (1989). Instead of sending "by certified or registered mail or hand delivery" notice of a trustee sale purchaser's right to seek reimbursement in the event of redemption of the property by the IRS as specified by that regulation, an IRS employee had telephoned the purchaser to give verbal notice. Rejecting the government's argument that such actual notice was sufficient, the court of appeals ruled that "[t]here was simply no compliance with the mandatory provisions of C.F.R. § 301.7425–4(b)(4)(ii), which in our view is sufficient to invalidate the certificate of redemption filed by IRS on August 24, 1989." *Id.* at 302 (footnote omitted).[3] In that case, the Tenth Circuit read *Goodwin* as follows:

> In [*Goodwin*] a federal statute, 26 U.S.C. § 6335, required that a taxpayer whose property was seized for delinquent payroll taxes be given notice in writing, i.e., personal service, of the seizure, or by leaving said notice at his usual place of abode or business, and in connection therewith the Ninth Circuit held that service by certified mail, even though received by the taxpayer, was defective.

*Id.* at 303.

It is uncontroverted that notice of seizure in this case was not given to Joseph Bonacci by personal service or by leaving the notice at Bonacci's "usual place of abode," the Leo Way residence. While the I.R.S. was aware that Joseph Bonacci was actually to be found at a federal institution in Texas, it acted upon the understanding that the Leo Way residence continued to serve as Joseph Bonacci's "usual place of abode," not merely as his "last known address." Revenue Officer Jackson testified to his understanding that Debra Bonacci continued to receive information there and was acting on Joseph Bonacci's behalf during his absence, and that he personally "dealt with Debra on several occasions at the Leo Way address[.]" Tr. at 15:22–23. *See* Tr. at 11:13–15, 15:16–24, 17:21–18:3. He assumed, correctly or not, that Debra Bonacci received the notice of seizure by certified mail, and that Joseph Bonacci received actual notice of the seizure through Debra Bonacci. Tr. at 19:8–23, 13:12.[4]

This does not appear to be a case in which "the owner cannot readily be located, or has no dwelling or place of business within such district," and therefore "the notice may be mailed to his last known address" as provided in 26 U.S.C. § 6335(a). The Government knew where Joseph Bonacci was. Tr. at 7:4. Moreover, it continued to treat the Leo Way residence as his "usual place of abode." As Revenue Officer Jackson testified:

> Q  You mailed the letter *to his home address;* is that correct?
>
> A  That's correct.

Tr. at 10:24–11:1 (emphasis added). *See also* Tr. at 15:4–8.

If, as the Tenth Circuit seems to suggest, a strict reading of the requirements of § 6335(a) is the correct one, then the Government did not comply with that statute in attempting to provide notice of seizure of the Bonaccis' jewelry to the constructive possessor of those items, Joseph Bonacci.

As was the case in *Goodwin,* the Government's offer of proof supporting an inference

---

**3.** The Tenth Circuit compared the situation in *Title Insurance Co. of Minnesota* to that in *Colorado Property Acquisitions, Inc. v. United States,* 894 F.2d 1173 (10th Cir.1990), "where the 'shoe was on the other foot,' so to speak," in which the IRS benefitted from a lending institution's failure to strictly comply with 26 U.S.C. § 7425(c)(1), requiring that notice of foreclosure sale be sent to the IRS by registered or certified mail or personal service. The lending institution had sent notice to the IRS by regular mail. "Here," the court concluded, "the IRS's failure to strictly comply with a federal regulation invalidated its certificate of redemption." *Id.* at 302.

**4.** During cross-examination, Jackson acknowledged that he did not know whether plaintiffs Monte Bonacci and Martha Bonacci received actual notice of the seizure of the jewelry from the safety deposit box and he did not recall discussing the seizure with Debra Bonacci. Tr. at 13:17–14:3.

that Joseph Bonacci or Debra Bonacci had actual notice of the seizure, *see* Tr. at 8:5–20:6–15, 22:21–25:8, does not suffice to meet § 6335(a)'s express requirements.

Notice of seizure thus having not been given in conformity with the literal terms of § 6335(a), the nine-month limitations period set forth in 26 U.S.C. § 7426(c)(1) has not commenced to run as against plaintiffs' claims in this action. The Government's motion to dismiss must, therefore, be DENIED.